DOHR, Administrator, Respondent, vs. WISCONSIN CENTRAL
RAILWAY COMPANY, Appellant.

*October 25, 1910—January 31, 1911.*

*Railroads: Death of servant: Comparative negligence: Questions for
jury.*

1. In an action against a railroad company for the death of a sec-
   tion foreman who was killed in a collision between his handcar
   and a train, the negligence of decedent and that of the engineer,
   both of which contributed to the accident, are *held* upon the evi-
   dence to have been ordinary negligence only.
2. In such a case, under sec. 1816, Stats. (Laws of 1907, ch. 254), the
   trial court must ascertain and decide whether anything in the
   evidence would authorize the jury to find that the negligence of
   the engineer was greater and contributed in a greater degree to
   cause the injury than that of the decedent.
3. In all cases in any wise doubtful those questions should be sub-
   mitted to the jury.
4. In ascertaining whether the negligence of one is greater than
   that of another the court is to consider that care must be pro-
   portionate to the risks to be apprehended and guarded against.
5. Negligence of the injurer may be held to contribute in a greater
   degree to cause the injury where, other things being equal, such
   negligence displays a greater lack of ordinary care than that
   of the injured person, or where the negligence of the injured
   person was only remotely or not at all the cause of his injury,
   while the negligence of the other person was the proximate
   cause of the injury.
6. These comparisons are made not on the ancient classification of
   negligence into slight, ordinary, and gross, but by comparing
   the ordinary negligence of one with the ordinary negligence of
   the other and ascertaining which was the more culpable.
7. It appearing in this case that each of the two servants of the rail-
   road company, the injured and the injurer, was of equal rank
   and authority in the management of the vehicle used and con-
   trolled by him; that the responsibility resting on each for his
   safety and the safety of others was equal; that their opportuni-
   ties for anticipating and avoiding danger were equal; that the
   necessity for the injurer to continue his course without stopping
   was more imperative; that the injured servant was required by
   rules to exercise diligence to keep out of the way of the injurer;

and that the injury resulted from the collision of the two vehi-
cles negligently moved in opposite directions to a meeting point
on the same track, it cannot be said that the negligence of the
injurer was greater than that of the injured, and there was no
question in that respect for the jury.

WINSLOW, C. J:, and SIEBECKER, J., dissent.

APPEAL from a judgment of the circuit court for Brown
county: S. D. HASTINGS, Circuit Judge. *Reversed.*

For the appellant there was a brief by *John L. Erdall* and
*W. A. Hayes,* attorneys, and *A. H. Bright,* of counsel, and
oral argument by *Mr. Hayes.* They cited, among other cases,
*Ives v. Wis. Cent. R. Co.* 128 Wis. 357, 107 N. W. 452;
*Ransom v. C., St. P., M. & O. R. Co.* 62 Wis. 178, 22 N. W.
147; *Kiley v. C., M. & St. P. R. Co.* 138 Wis. 215, 119 N.
W. 309, 120 N. W. 756; *Zeratsky v. C., M. & St. P. R. Co.*
141 Wis. 423, 123 N. W. 904; *Boucher v. Wis. Cent. R. Co.*
141 Wis. 160, 123 N. W. 913; *Gumz v. C., St. P. & M. R.
Co.* 52 Wis. 672, 10 N. W. 11; *Hinz v. C., B. & N. R. Co.*
93 Wis. 16, 66 N. W. 718; *Atkinson v. Goodrich T. Co.* 60
Wis. 141, 18 N. W. 764; *Owen v. Portage Tel. Co.* 126 Wis.
412, 105 N. W. 924; *Hackett v. Wis. Cent. R. Co.* 141 Wis.
464, 124 N. W. 1018.

For the respondent there was a brief by *Martin, Martin &
Martin,* and oral argument by *P. H. Martin.* They cited
*Bodenheimer v. C. & N. W. R. Co.* 140 Wis. 623, 123 N. W.
148; *Anderson v. Horlick's M. M. Co.* 137 Wis. 569, 119 N.
W. 342; *Clary v. C., M. & St. P. R. Co.* 141 Wis. 411, 123
N. W. 649; *Zeratsky v. C., M. & St. P. R. Co.* 141 Wis. 423,
123 N. W. 904; *Louisville & N. R. Co. v. Melton,* 218 U. S.
36, 30 Sup. Ct. 676.

The following opinion was filed December 6, 1910:

TIMLIN, J.   In this case the jury found the decedent and
the defendant each guilty of negligence contributing to cause
death, and that the negligence for which the defendant was
responsible was greater than that of the decedent and contrib-

uted in a greater degree to the injury and death of decedent. The case is presented by counsel for the appellant describing the negligence of decedent as gross negligence or a very high degree of ordinary negligence, while the counsel for respondent minimizes this and contends that the facts show gross negligence on the part of the other erring servant of the appellant.

As we look at the facts neither of these contentions can be upheld. On a very dark, foggy morning on September 12, 1908, the decedent, ' section foreman for defendant, started out at 7 o'clock with another sectionman on his handcar bound west from Sherwood station to a point called High Cliff Junction, about one and one-half miles distant. Between Sherwood and High Cliff and a mile west of Sherwood there is a whistling post for that station; a quarter of a mile further west a highway crossing. The first regular train from the west was due at Sherwood at 7:42 o'clock that morning, and this would give the handcar time to reach High Cliff. . Decedent went on the handcar at the usual hour of going to work in the discharge of his duty, and he had on the handcar some tools and implements and lunch pails and proceeded at a moderate rate of speed without stopping until the moment of collision, but looking and listening for an approaching train. Irregular trains were liable to be sent over this road at any time. The sectionmen were requested to look out for all passing trains and were furnished with time-tables of regular trains. The collision was with an irregular train. The verdict of the jury that the deceased was guilty of lack of ordinary care which contributed to cause his death is well supported on this evidence, but there was nothing of extraordinary recklessness in going out to work on a very foggy morning in this way. At 6:50 o'clock there left Menasha, or Menasha Junction, eastbound, a locomotive engine and caboose which collided with this handcar at a point about 4,000 feet west of Sherwood. There was evidence tending to show

that the locomotive engineer failed to sound his whistle at the first highway crossing west of Sherwood or at the mile-post one mile west of Sherwood, and was proceeding eastwardly at the rate of twenty-two miles per hour in this dense fog. There was also evidence tending to show that the headlight of this locomotive engine had been accidentally extinguished prior to the collision, and also that it was not feasible to tell from the engineer's position in the cab on a foggy day whether or not the headlight was burning. There was here no more than ordinary negligence. The rate of speed was not unusual, although rather high for an irregular train in such a fog, the failure to sound the whistle to some degree explained but not excused by the difficulty of determining the exact location of the engine in the fog. The lack of headlight was not known to the engineer. He was running ahead of the passenger train. So that instead of measuring gross negligence or a very high degree of ordinary negligence against the like, we are measuring ordinary negligence against ordinary negligence, and the question is, Was there, as required by our statute, evidence from which the jury might say that the negligence of the decedent was slighter than that of the engineer and the negligence of the engineer contributed in a greater degree than did that of decedent to cause the death of the latter? Each of these employees of the defendant was, we presume, discharging his duty as such in good faith. The decedent took the chances of going against an irregular train in this fog, relying upon his ability to escape and remove his handcar after hearing the whistle or seeing the headlight. He had full information that he was expected to protect himself against any irregular train that might happen along. This lack of care had the proper causal connection with his death recognized in the law as proximate cause. The engineer should have known that there might be travelers making the crossing or sectionmen working on the track, and he should have sounded his whistle at the crossing and at the

mile-post, and in case he could not see the crossing post or mile-post he should have sounded his whistle quite continuously as a warning to sectionmen, and perhaps should also have decreased his speed to about that of an ordinary vehicle.

When there is a collision between two vehicles traveling in opposite directions on the same track and the ordinary negligence of the person in charge of each vehicle has caused the collision and one of such persons is injured or killed, the court must, notwithstanding subd. 5 of sec. 1816, Stats. (1898), as amended by ch. 254, Laws of 1907, when the point is properly raised, search the evidence and ascertain whether anything appears from which the jury would be authorized to find that the negligence of the injurer was greater and contributed in a greater degree to cause the injury than that of the injured servant. *Kiley v. C., M. & St. P. R. Co.* 138 Wis. 215, 119 N. W. 309, 120 N. W. 756. The same interpretation was given to a similar statute, sec. 2323, Stats. (1898), and cases in notes. In all cases in any wise doubtful the question should be submitted to the jury. Id.

In *Zeratsky v. C., M. & St. P. R. Co.* 141 Wis. 423, 123 N. W. 904, it is recognized that the question whether the negligence of the injured was slighter than that of the injurer may be a question of fact or one of law. In case the evidence on this point is uncontroverted and permits of only one inference, it is for the court to decide this question. The respective negligences are not to be measured or compared merely by the old classification of slight, ordinary, and gross. In that case the plaintiff was a rear brakeman on a freight train and omitted a duty imposed upon him by rule of his employment to go back and signal any oncoming train whenever his freight train stopped on the main track. But his superior, upon whom the heavy responsibility of the care of life and property rested, the conductor who had charge of the train, had detached the locomotive, left the freight train, or part of it, standing on the main track, and departed for a station

some distance ahead without even signaling to the plaintiff that the train was to make a stop. This was most culpable faithlessness and negligence in a trust involving the lives and safety of subordinates and endangering the lives of passengers on other trains. The train dispatcher was also negligent, and perhaps the conductor of the passenger train following the abandoned freight. Zeratsky attempted to excuse his delay in going back to signal the passenger train following. It was held that it was for the jury to determine whether the negligence of the other servants of the defendant was greater than that of the injured employee and contributed in a greater degree to cause his injury. *Boucher v. Wis. Cent. R. Co.* 141 Wis. 160, 123 N. W. 913, was a closer case on this question, but it was considered that there was evidence from which the jury was authorized to infer that the injured employee might have relied on the other negligent employee of higher rank and greater responsibility to properly respond to the signal given, and, so relying, stepped into a place, deadly if the other negligent employee did not properly respond to the signal given, but not so if the signal was properly responded to. The injurer negligently failed to properly respond to the signal given, and moved his engine further than was necessary while the injured servant was in a somewhat perilous position at the best and in a position calling for great care on the part of the engineer. It was held that whether the negligence of the engineer was greater and contributed in a greater degree to cause the injury was for the jury. In *Clary v. C., M. & St. P. R. Co.* 141 Wis. 411, 123 N. W. 649, the jury found the plaintiff not guilty of contributory negligence, thus making a verity of the lesser density of fog, the reliance on his superior, the impossibility of conforming to the rule, the abrogation of the rule by nonuser and consent, and all those facts which tended to support that finding. Here the finding of the jury is the other way and impels us to accept as verities the facts in evidence which support this finding.

In ascertaining whether the negligence of one is greater

than that of another we must keep in mind that care must be proportionate to risks to be apprehended and guarded against. "Yet the *degree* of care required is the same. In either case reasonable care, or what is the same thing, ordinary care, only, is required. The term 'reasonable care' has no fixed, definite signification, but is a relative term." *Read v. Morse,* 34 Wis. 315. If one messenger carry a bag of pennies to a bank and another a bag of gold, a higher degree of ordinary care would be exacted from the latter. *Ward v. M. & St. P. R. Co.* 29 Wis. 144; *Cayzer v. Taylor,* 10 Gray, 274. "Ordinary care must be measured by the character and risks and exposures of the business; and the degree [of ordinary care] required is higher when life or limb is endangered, or a large amount of property is involved, than in other cases." Id. "Care and diligence should always vary according to the exigencies which require vigilance and attention, conforming in amount and degree to the particular circumstances under which they are to be exerted." *Holly v. Boston G. L. Co.* 8 Gray, 123. Negligence of the injurer may be held to contribute in a greater degree to cause the injury where (other things being equal) such negligence displays a greater lack of ordinary care than that of the injured. So, even if there was lack of ordinary care on the part of the injured but his delinquency in this respect was only remotely or not at all the cause of his injury, while the negligence of the other servant was the proximate cause of the injury. *Clary v. C., M. & St. P. R. Co.* 141 Wis. 411, 123 N. W. 649. In an extreme case, cited here merely for illustration, it has been held as matter of law that the negligent act does not in any degree cause or contribute to cause an injury where the person responsible for the act because of the technical knowledge or skill of those exposed to injury could not reasonably have expected that any of them would be thereby injured. *Huber v. La Crosse City R. Co.* 92 Wis. 636, 66 N. W. 708. Likewise, negligence on the part of the plaintiff does not contribute to cause his injury unless it has the same causal relation

.to his injury as is required of the negligence of the defendant in order to hold the latter liable. There are many cases which disclose comparisons in the degree of ordinary care required and in the degree in which lack of ordinary care contributed to produce an injury. *Kellogg v. C. & N. W. R. Co.* 26 Wis. 223; *Stucke v. M. & M. R. Co.* 9 Wis. 202; *Bolin v. C., St. P., M. & O. R. Co.* 108 Wis. 333, 84 N. W. 446. The questions must be met and decided under this statute as they arise, and in time rules will be evolved from such decisions. Whether the plaintiff's negligence was slighter than that of the other person charged, and whether the negligence of the latter contributed in a greater degree to produce the injury, must ordinarily be questions for the · jury. These questions can only be taken from the jury where there is a total lack of evidence to support a finding that the negligence of the plaintiff was slighter, or a total lack of evidence to support a finding that the negligence of the other person contributed in greater degree to the injury. For the instant case it is enough to say that here each servant of the railroad company, the injured and the injurer, was of equal rank and authority in the management· of the vehicle used and controlled by him. The responsibility resting on each for his safety and the safety of the group co-operating with him and for the safety of the other negligent servant and his co-operating group and for the safety of passenger trains was at least .equal. The opportunities for anticipating and avoiding danger were at least equal. The necessity for the injurer to continue his course without stopping was more imperative. The rules of employment required the injured servant to exercise diligence to keep out of the way of the injurer. The actionable fact, death, resulted from the collision of the two vehicles, the simultaneous and indivisible result of two vehicles negligently moved in opposite directions to a meeting point on the same track. Ordinary care on the part of the injured servant in the very particular in which the jury must have found him negligent would have avoided the injury, notwith-

standing the negligence of the injurer. The culpability of the injurer in forgetting or failing to blow his locomotive whistle more frequently as a warning to the trackmen was equal to the culpability of the injured in taking out his subordinate on a handcar and proceeding along the track in the unusual fog when a train might be expected to move down upon them. We may presume the injured relied on his ability to get out of the way after hearing the whistle, and the injurer on the rule of the employment that the injured must keep out of the way of trains. Under such circumstances there is no evidence from which a court or a jury can say that the negligence of the injured was slighter than that of the injurer. The judgment must therefore be reversed. This makes it unnecessary to decide whether in the instant case there was any evidence from which the jury might infer that the negligence of the injurer contributed in a greater degree than the negligence of the injured to cause the injury. Whether the jury could consider the greater weight and impact of the locomotive as a more potent cause of the injury and thus contributing in a greater degree, or the failure to sound the whistle as expected, and the tendency of such failure to induce the injured servant to continue in his careless course on the track, or the more imperative duty to continue resting upon the injurer, or the rule of the railroad by which the injured was informed that he must rely on himself to keep out of the way of trains, as bearing on this second requirement of the statute, need not be decided.

*By the Court.*—Judgment reversed, and the cause remanded with directions to enter judgment for defendant.

The following opinion was filed January 6, 1911:

WINSLOW, C. J. (*dissenting*). As I see this case duty compels me to dissent.

When two persons are negligent and injury to one proximately results from the combined negligence of both, it must

often be a very delicate and difficult question to decide whether the negligence of one was greater than that of the other and contributed in a greater degree to produce the injury.      There is no yardstick with which to measure the two acts of negligence, nor scales with which to weigh them.      However, the legislature has determined that in certain classes of cases this delicate question shall be decided and that upon its decision shall depend liability, and this court has sustained and applied that law.      It is not inherently more difficult to decide than many another question which courts and juries are daily compelled to decide.      It is said in the opinion of the court that these questions must ordinarily be questions for the jury, and that they "can only be taken from the jury where there is total lack of evidence to support a finding that the negligence of the plaintiff was slighter, or a total lack of evidence to support a finding that the negligence of the other person contributed in greater degree to the injury."

With this proposition I entirely agree, but I do not regard it as a complete statement of the legal principles which bear upon the questions in this case.

Negligence "is not a fact to be testified to, but can only be inferred from the *res gestæ*—from the facts given in evidence. Hence it may, in general, be said to be a conclusion of fact to be drawn by the jury under proper instructions from the court.      It is always so where the facts, or rather the conclusion, is fairly debatable or rests in doubt." *Langhoff v. M. & P. du C. R. Co.* 19 Wis. 489.

To draw this inference of fact from all the circumstances in evidence has been frequently said by this court to be "peculiarly the function of the jury." *Bohan v. M., L. S. & W. R. Co.* 58 Wis. 30, 15 N. W. 801; *Fitts v. Cream City R. Co.* 59 Wis. 323, 18 N. W. 186.

It has been also called a mixed question of law and fact, which is never taken from the jury except in very clear cases. *Pool v. C., M. & St. P. R. Co.* 56 Wis. 227, 14 N. W. 46.

The question whether the negligence, if any, is the proximate cause of the injury complained of is also an inference of fact, which is under all ordinary circumstances properly an inference to be drawn by the jury. *Atkinson v. Goodrich T. Co.* 60 Wis. 141, 18 N. W. 764. If the inferences of negligence and proximate cause are peculiarly inferences to be submitted to the jury, it seems to me to follow necessarily that the inferences as to the *quantum* or extent of the negligence on each side and the degree to which it proximately con‑ tributed to bring about the injury must fall within the same rule. They cannot be properly taken from the jury except in very clear cases where unprejudiced and reasonable minds can come to but one conclusion. In all cases where the facts are numerous, the evidence contradictory or involved, and the conclusions in any degree doubtful, the proper inferences on all of these propositions must be for the jury.

In the present case it seems to me there are unquestionably facts from which reasonable minds might draw different conclusions both as to the *quantum* of negligence on each side and as to the degree in which such negligence proximately contributed to cause the injury.

The deceased and his comrades were going to their work as their duty required, and they were going in the way they were expected to go. The evidence tends to show that they were proceeding slowly and carefully; their car was light and could be quickly stopped and lifted from the track out of dan‑ ger; they knew that no regular train was due; they also knew there were two or three highway crossings directly ahead of them as well as a station whistling post, and that any approaching locomotive was required to whistle at all of these places.

On the other hand, the engineer of the approaching engine knew that he was running wild; he knew, or should have known, that sectionmen would probably be on their way to work; he was driving his engine through the fog at a speed of

over twenty miles an hour without whistling at the road cross-ings; he was in charge, not of a light vehicle which could be stopped in few feet distance and taken from the track, but of a ponderous mass of steel and iron which was hurtling over the rails at a speed which rendered it impossible of ready control, and which would probably deal death and destruction to any one rightfully on the crossings or on the track who did not know of its approach till it emerged from the fog. Know-ing all these things, he sounded no whistle and came upon the deceased and his fellow workmen with his engine of death like a ball shot from a cannon.

Grant that it must be said that the deceased and his col-leagues were guilty of negligence, is there no room upon these facts for a reasonable mind to conclude that the negligence of the engineer was not only greater but contributed in a greater degree to the injury? I think there is ample room for such a conclusion, and so thinking I cannot agree with the result reached by the court in this case.

I am authorized to state that Mr. Justice SIEBECKER agrees with the views expressed in this opinion.

A motion for a rehearing was denied January 31, 1911.