GRASSER, Appellant, vs. ANDERSON and another, Respondents.

*April 8—April 27, 1937.*

For the appellant there was a brief by *Shannon & Higgins* of Kenosha, and oral argument by *Joseph E. Higgins* and *Frank J. Shannon.*

For the respondents there was a brief by *Alfred E. La France,* attorney for Wayne Anderson and the American Automobile Insurance Company and *Wilbershide & Baumblatt,* attorney for Wayne Anderson, all of Racine, and oral argument by *Mr. La France.*

FRITZ, J.   On this appeal the plaintiff George F. Grasser, as special administrator of the estate of Lucy M. Grasser, deceased, contends that the court erred in changing certain answers of a special verdict and then erred in so far as its judgment, entered upon the verdict as changed, dismissed the plaintiff's cause of action, under secs. 331.03 and 331.04, Stats., for damages for the death of the deceased by wrongful act; and also denied recovery for hospital, medical, and burial expenses, and the perpetual care of a cemetery lot, as damages sustained by the estate of the deceased.

All of the damages in question were sustained as the result of a collision at 11:30 p. m. on May 29, 1936, between automobiles operated by George F. Grasser and the

defendant Wayne Anderson. The collision occurred at the eastern termination and right-angled junction of a short thirty-feet-wide graveled road with the west lane of concrete Highway No. 42, which consisted of three ten-feet-wide lanes running north and south. The place of collision was about two hundred feet south of the north limits of the city of Kenosha, and one hundred forty feet south of the apex of an acute angle formed by the junction of former concrete Highway No. 42, coming from the south, with the present Highway No. 42 (named "Alford Drive" within the city limits). Anderson approached the place of collision as he drove south in the west lane of Highway No. 42. Grasser, approaching from the south, had driven north on the east lane of that highway until, when he was from seventy-five to one hundred feet south of the gravel road entering from the west, he drove northwest into the center lane. Before he did that he saw the lights of Anderson's automobile, and the latter saw Grasser's lights. There is a conflict in the evidence as to Grasser's course after he first entered that center lane. Either he proceeded ten to fifteen feet northward in that lane and then turned to his left to cross the west lane, or,—as the court concluded in passing upon the motions after verdict,—he first turned back toward the east lane and then "suddenly without visible sign or signal, other than the lights indicating a turning from lane to lane, . . . turned sharply to his left to enter a short crossroad from Alford drive to Highway No. 42 and directly across the path of the Anderson car." Whatever the facts may be in that respect, the evidence establishes that upon his turning left to cross, and when his automobile was but partly across the west lane, the right front part of Anderson's automobile struck Grasser's at about the right rear wheel and door.

The jury found that the collision was caused by Anderson's negligence as to speed, lookout, management, and con-

trol, and yielding the right of way. In relation to Grasser, the jury found that he was not negligent as to speed, giving a visible signal of intention to make a left turn, and management and control; but that, on the other hand, the collision was caused by his negligence as to lookout, yielding the right of way, and making the left turn; and, in that connection, the jury specifically added, on their own accord, that Grasser was negligent as to lookout because he "should look before crossing westerly lane;" and that his negligence in making the left turn was a cause "because he should have stopped before his approach to the intersection." In finding what percentage of the total causal negligence was attributable to each of the parties, the jury answered that five per cent was attributable to Grasser, and ninety-five per cent to Anderson. In ruling upon the motions after verdict, the court changed, (1) the jury's finding that Anderson was negligent as to yielding the right of way, by holding that he was not negligent in that respect; (2) the jury's finding that Grasser was not negligent as to management and control, by holding that he was guilty of causal negligence in that respect; and (3) the jury's finding as to the percentages, by holding that Anderson's negligence was not more than fifty per cent, and Grasser's was not less than fifty per cent of the total causal negligence.

The primary question on this appeal is whether the court erred in substituting its determination that Anderson was not negligent, in respect to yielding the right of way, for the jury's finding that he was. The latter's finding on that issue was clearly inconsistent with its finding that there was also causal negligence on the part of Grasser in not yielding the right of way. Both findings could not be approved. But could the court hold, as a matter of law,—in view of facts established by uncontradicted evidence, together with facts specifically found by the jury in findings which, upon ap-

proval by the trial court, must be deemed verities,—that Anderson was not negligent in respect to yielding the right of way? On that issue, the question on appeal is whether, in view of the record, including the approved findings of the jury, herein, the credible evidence did not reasonably admit of the jury's answer in the verdict that Anderson was negligent in respect to yielding the right of way. Sec. 85.18 (1), Stats. (also sec. 23.13 of the Ordinances of the City of Kenosha), provides:

". . . The driver of a vehicle approaching but not having entered an intersection shall yield the right of way to a vehicle within such intersection and turning therein to the left across the line of travel of such first-mentioned vehicle; provided, the driver of the vehicle turning left has given a plainly visible signal of intention to turn as aforesaid."

That requires a driver who intends to turn left to give, even though he is first in the intersection, a plainly visible signal of his intention to turn to his left, in order to be entitled to have an approaching driver, who has not entered the intersection, yield the right of way. In other words, in so far as that provision is concerned, even though the approaching driver has not entered the intersection, he is not required to yield the right of way to another who first entered the intersection and then makes a left turn, if the latter has not given a plainly visible signal of his intention to turn to his left. The "plainly visible signal" required by that provision is evidently a signal by a motion of the hand, or which in some other manner unequivocably indicates the intention to turn to the left. That Grasser gave no such signal is undisputed. Merely fluctuating rays of his headlights as he may have turned somewhat toward his right or left were insufficient, under the evidence herein, to constitute the plainly visible signal required under sec. 85.18 (1), Stats., Consequently, in so far as there was no compliance by Grasser with

that provision, it was not the duty of Anderson to yield the right of way to him. Under those circumstances, the applicable and controlling statutory provision is the following, in sec. 85.18 (5), Stats.:

"The operator of a vehicle within an intersection intending to turn to the left across the path of any vehicle approaching from the opposite direction, may make such left turn where it is permitted only after affording a reasonable opportunity to the operator of such vehicle to avoid a collision." (Substantially the same as sec. 23.13 (2), Ordinances of Kenosha.)

In view of that provision, Grasser should not have turned left into the west lane until after he had afforded Anderson, as the driver of an approaching car, a reasonable opportunity to avoid a collision, upon realizing that Grasser would enter the pathway of Anderson's approaching automobile in that lane. In other words, because of Grasser's failure to first give Anderson a plainly visible signal of his intention to turn left into the latter's pathway, Grasser was entitled to make the turn only after first affording a reasonable opportunity to Anderson to avoid a collision, as he approached, under the existing and apparent circumstances. Consequently, if Grasser, before finally turning left to cross the west lane, did not afford Anderson the reasonable opportunity to avoid a collision, to which he was entitled, then Grasser's failure in that respect was the most significant and controlling ultimate fact involved in the determination of the important issue of who' was guilty of causal negligence in respect to yielding the right of way. The conclusion that Grasser did negligently fail to afford Anderson a reasonable opportunity to avoid the collision is well warranted in view of the facts,—which were found and specifically stated by the jury on its own initiative in its verdict,—that, (1) Grasser was negligent in respect to lookout because he "should look before crossing

the westerly lane;" and that, (2) his negligence in making the left turn was a cause of the collision "because he should have stopped before his approach to the intersection." There is no escape from the conclusion that because Grasser did not look before crossing the west lane, and because he made his final left turn without stopping before entering that lane, Anderson was not afforded the reasonable opportunity to avoid the collision, which he was entitled to under the statutes; and, likewise, the conclusion that, because Anderson was not afforded that opportunity, Grasser did not have the right of way and was negligent in not yielding it to Anderson, who consequently was not negligent in failing to yield it to Grasser. Therefore, the court was well warranted in changing the jury's answers in those respects.

Furthermore, as Anderson was not obliged to yield the right of way, under the statutes, and as the court approved the jury's findings that Grasser was guilty of causal negligence in respect to not yielding the right of way, to lookout because he "should look before crossing the westerly lane," and to making the left turn "because he should have stopped before his approach to the intersection," the court was likewise warranted in holding that the collision was attributable to Grasser's negligence to as great an extent as it was attributable to Anderson's negligence in relation to speed, lookout, and management and control. Even though the evidence admitted of the jury's finding as to causal negligence in those respects on Anderson's part, as his speed and the proximity and movements of his approaching automobile were observable by Grasser in the exercise of ordinary care, the trial court's final determination that Grasser suddenly and "without visible sign or signal, other than the lights indicating a turning from lane to lane, . . . turned sharply to his left to enter a short crossroad . . . and directly across the path of the Anderson car," is entirely in accord with the

jury's finding that the making of that left turn by Grasser was a cause of the collision "because he should have stopped before his approach to the intersection." That cause, in view of the reason thus stated by the jury in connection with Grasser's causal negligence in respect to lookout, because he "should look before crossing the westerly lane," and the consequent failure to afford Anderson a reasonable opportunity to avoid the collision, was clearly the predominating cause thereof; and rendered it inevitable to such an extent that it was more attributable to Grasser's negligence than the negligence of Anderson. Consequently the court's determination to that effect was warranted by the record. *Kilcoyne v. Trausch,* 222 Wis. 528, 269 N. W. 276, 280; *Zenner v. Chicago, St. P., M. & O. R. Co.* 219 Wis. 124, 262 N. W. 581; *Lese v. Chicago & N. W. R. Co.* 154 Wis. 547, 143 N. W. 676; *Dohr v. Wisconsin Central R. Co.* 144 Wis. 545, 129 N. W. 252. Therefore, the judgment was proper in so far as it denied recovery for Grasser's pecuniary injury and loss of society, etc., under secs. 331.03 and 331.04, Stats., and for his damages on his counterclaim.

Appellant also contends that the court erred in denying recovery for the benefit of Lucy M. Grasser's estate of amounts which were paid by George M. Grasser for his wife's medical, hospital, and funeral expenses, and the perpetual care of the cemetery lot on which she was buried. As it appears from receipts, which are in evidence, that he personally paid the funeral expenses and perpetual-care charge, and he states in his brief that he paid all of those expenses, and as he was personally liable therefor, as a matter of law, there was no obligation on the part of his wife's estate, because of which there could be any recovery therefor for its benefit. However, even if the husband had not personally paid those expenses, the only possible obligation on the part of the wife's estate would be for her funeral

expenses. *Schneider v. Estate of Breier,* 129 Wis. 446, 449, 109 N. W. 99; *Estate of Phalen,* 197 Wis. 336, 339 *et seq.,* 222 N. W. 218; *Cook v. Nelson,* 209 Wis. 224, 230, 244 N. W. 615. The estate of a deceased wife is not liable for the expense of her last sickness when she is survived by a husband, who is liable for all necessaries provided for her during her lifetime (*Estate of Phalen*) ; and as the charges for perpetual care were for the care of a lot on which there were two burials and there was room for five more, the entire amount thereof could not be included as expenses of her funeral.

*By the Court.*—Judgment affirmed.