HANSEN, by Guardian *ad litem,* Plaintiff and Respondent, vs. STORANDT and another, Defendants and Appellants: WITTMER and another, Impleaded Defendants and Appellants.

*March 7—April 11, 1939.*

64

For the appellants F. W. Storandt and the Milwaukee Automobile Insurance Company there were briefs by *Hale & Skemp* of La Crosse, and oral argument by *Quincy H. Hale.*

For the impleaded defendants and appellants William Wittmer and the American Automobile Insurance Company there were briefs by *Higbee & Higbee,* and oral argument by *Robert D. Johns,* all of La Crosse.

For the respondent there was a brief by *Schubert & Stevenson* of La Crosse, and oral argument by *A. H. Schubert* and *W. H. Stevenson.*

WICKHEM, J. The accident here involved occurred near the village of West Salem at the junction of State Trunk Highway No. 16 and County Trunk Highway C. At the point of collision Highway No. 16, a concrete road, runs in a generally northeasterly-southwesterly direction. County Trunk C runs north from the village of West Salem, and looking north the junction is in the shape of an inverted "Y" with the state trunk highway forming the northerly stem and the western fork of this "Y." At about 8 o'clock p. m., on September 3, 1937, Storandt and a boy companion were returning from a fishing trip to their home in West Salem. They were proceeding south on Highway No. 16 and approaching the junction where the accident happened. At the same time Wittmer, who was accompanied by plaintiff, was

driving north on the state trunk highway and approaching the junction. Storandt turnéd to the left to enter County Trunk C, and was struck by the Wittmer car as he entered the east half of the roadway. The front portion of the Wittmer car struck the front right side of the Storandt car.

It is Storandt's contention that he was proceeding slowly and carefully; that he put out his left hand as a signal for a left turn; that the Wittmer car was a sufficient distance away so that he had reasonable grounds to believe that he had time to pass, and that Wittmer would be able to see and respect his signal; that Wittmer was in fact going at a very high rate of speed, and failing to keep a proper lookout for the reason that his attention was centered upon a car proceeding north on Highway C and which would or might be in competition with him for the intersection or junction. Wittmer's claim is that he was proceeding at a moderate rate of speed and keeping a proper lookout; that he saw the Storandt car and the car approaching on the county trunk highway, but that Storandt gave no signal or evidence of his intention to turn until immediately before he actually did turn, and that he made such a sudden invasion of Wittmer's path that the latter was unable to stop his car or otherwise avoid the collision. The jury found that Storandt had given the signal of his intention to turn; it found, however, that he was negligent with respect to making his left turn under the conditions then existing, which means that he did not afford Wittmer a reasonable opportunity to avoid the collision because he turned too abruptly into the path of the latter's car. While the jury exonerated Wittmer as to speed and management, it found that he failed to keep a proper lookout, and it is a fair conclusion from the record that the jury was of the view that Wittmer had been giving too much of his attention to the car approaching from his right from along Highway C, and that he did not maintain such a lookout as would be effective to discover the left-turn signal.

With respect to Storandt, the evidence presents a jury question, and the findings cannot be disturbed. The jury believed Storandt's testimony as to giving a signal for a left turn, but concluded that he had turned too abruptly, and had failed to afford Wittmer a reasonable opportunity to avoid the collision. The applicable statutes are secs. 85.18 (1) and 85.18 (5). These read as follows:

Sec. 85.18 (1) ". . . The driver of a vehicle approaching but not having entered an intersection shall yield the right of way to a vehicle within such intersection and turning therein to the left across the line of travel of such first mentioned vehicle; provided, the driver of the vehicle turning left has given a plainly visible signal of intention to turn as aforesaid."

Sec. 85.18 (5) "The operator of a vehicle within an intersection intending to turn to the left across the path of any vehicle approaching from the opposite direction, may make such left turn where it is permitted only after affording a reasonable opportunity to the operator of such vehicle to avoid a collision."

These are not alternative in operation. Sec. 85.18 (1), Stats., gives the right of way to the driver who is making a left turn only if the latter gives a plainly visible signal of intention to turn. Sec. 85.18 (5), Stats., provides that persons making a left turn may do so only after affording reasonable opportunity to the operator of an approaching vehicle to avoid a collision. These are separate and distinct provisions. The first makes the right of way of the turning driver depend upon the giving of a signal for a left turn. The second requires that left turns be made only after affording a reasonable opportunity to the driver of the approaching vehicle to avoid a collision. Thus, a person who makes a brief signal for a left turn followed by an abrupt and immediate movement of his vehicle to the left in such a manner as not to give an approaching car a reasonable opportunity to. avoid the collision may not exonerate himself merely by show-

ing that he gave a signal. It is contended that such a view is repudiated in *Grasser v. Anderson,* 224 Wis. 654, 660, 273 N. W. 63. In that case the driver making the left turn did not give a signal of his intention. The court held that due to this circumstance this was not required under the provisions of sec. 85.18 (1) to yield the right of way to him. The court then said:

"Under those circumstances, the applicable and controlling statutory provision is the following, in sec. 85.18 (5), Stats."

After quoting the provisions of sub. (5), the court said:

"In view of that provision, Grasser should not have turned left into the west lane until after he had afforded Anderson, as the driver of an approaching car, a reasonable opportunity to avoid a collision. . . . In other words, because of Grasser's failure to first give Anderson a plainly visible signal of his intention to turn left into the latter's pathway, Grasser was entitled to make the turn only after first affording a reasonable opportunity to Anderson to avoid a collision, as he approached, under the existing and apparent circumstances."

While the opinion as thus phrased gives color to the contentions of Storandt, all that the court meant to decide was that no signal for a left turn having been given, the question of right of way was out of the case and the only applicable statute was sub. (5). This is literally true, and we have no disposition to recede from this position. It was not intended to hold that one who makes a left-turn signal thereby acquires a right so to proceed across the highway as not to afford approaching drivers a reasonable opportunity to avoid a collision. The giving of a signal is the condition upon which the turning driver's right of way depends. But even the existence of a right of way, while a circumstance that is entitled to considerable weight in resolving issues of negligence, gives no driver the right to proceed carelessly or recklessly into the path of another car under circumstances which give the other car inadequate opportunity to avoid a collision. In this case we think the jury was entitled to believe from the

evidence that while a signal was given, it was so immediately followed by an abrupt turn across the path of the Wittmer car as not to give Wittmer an adequate opportunity to avoid the accident. Hence, it is our conclusion that there was a jury question so far as Storandt's negligence was concerned.

The contention of Wittmer that the finding of negligent lookout is not sustained presents more difficulties. Starting with the premise that there was a sudden invasion of his pathway which did not afford him reasonable opportunity to avoid the collision, it is difficult to see how his lookout could have materially contributed to the result. Leaving this point, however, for the moment, we fail to discover any evidence of negligent lookout on the part of Wittmer. A great deal of stress is put upon the fact that a car was approaching Highway No. 16 along County Trunk C, which formed the eastern fork of the "Y" which constitutes the junction between the two highways. This car was in such a position and proceeding at such a rate of speed that it could easily have been concluded by Wittmer that it might be in competition with him for the intersection. From this it is argued by Storandt that Wittmer could have been found by the jury to have been centering his attention upon this approaching car and paying insufficient attention to the cars proceeding south on the state trunk highway. We find no support for this view in the evidence. Undoubtedly, Wittmer had to direct some of his attention to this car, but this by no means warrants the inference that he did not see the Storandt car. He claims that he did see it. It is true that the jury might reasonably conclude from Wittmer's denial that a left signal was given that Wittmer was not looking at the Storandt car when Storandt signaled and made the turn. This is not sufficient to sustain a verdict of negligent lookout. Wittmer had a duty to keep both cars in view and obviously could not discharge this duty by keeping each of them in sight all the time. He was perfectly justified in looking from one car to the other, and if during a moment when his attention was focused on the car

to his right he missed a left-turn signal and the beginnings of an abrupt turn by Storandt, it would by no means follow that a jury could infer negligent lookout. Further than this, we think in view of the jury's finding that an abrupt turn was made immediately following the signal that it could not be said that his failure to keep a lookout contributed to the accident. By hypothesis, the turn was made under circumstances which gave him no reasonable opportunity to avoid the collision. The following comment by the court in *Koperski v. Hoeft,* 179 Wis. 281, 283, 191 N. W. 571, is peculiarly applicable here:

"The jury found that the defendant did not keep a proper lookout. We find no evidence to sustain such a finding. The only possible support in the evidence for this finding is the fact that the plaintiff was struck. The evidence on the part of the defendant is that he was keeping a careful lookout. . . . If the plaintiff was not seen before he was in front of the automobile, it does not prove that the defendant was not keeping a proper lookout. To so hold is to hold that a driver must look constantly in every direction at one and the same time—a manifest impossibility. Upon any theory of the case the plaintiff had appeared in the zone of danger a mere instant before he was struck. . . . It appears from the testimony of the plaintiff himself that he moved into the zone of danger from a point of safety, and the fact that the defendant, the driver of the automobile, did not see him at that particular instant does not charge the driver with negligence under all the facts and circumstances."

We conclude that the judgment must be set aside as to Wittmer, and judgment ordered dismissing plaintiff's complaint as to him and granting him a judgment for undiminished damages on his cross complaint.

It is next contended by Storandt that the damages were excessive. At the time of the accident plaintiff was sixteen years of age. She sustained a fracture of the lower right jaw and of a bone in the little finger of her left hand. She also had several scratches and cuts on her face and some minor

bruises on her body. As a result of the blow to her jaw several of her teeth were loosened, knocked out, or pushed out of position. She was confined to the hospital for one week and at home for several weeks thereafter. At the time of the trial she had a noticeable scar on the left side of her face, three scars upon her forehead, and one upon her scalp. The evidence is that these were permanent in character. It was necessary to remove seven of her teeth and to replace these by three bridges, two on the upper jaw and one on the lower. Considering plaintiff's age and sex, we believe the damages of $3,750 are not excessive. Plaintiff's permanent disabilities are of considerable magnitude especially to a girl of her years. The physical scars and the artificial teeth permanently impair her attractiveness. The prediction was made by one of the expert witnesses that the bridges would have a tendency to wear out the natural teeth upon which they were built necessitating at an early age complete upper and lower plates, and that the condition of her jaw as a result of the accident would make these difficult to fit and keep in place. It seems to us that it ought not to be necessary to labor the point that these are serious and important injuries, and it is our conclusion that we cannot disturb the finding of damages.

*By the Court.*—The judgment in favor of plaintiff and against defendant Storandt is affirmed. That in favor of plaintiff and against defendant Wittmer is reversed with directions to dismiss plaintiff's complaint. The judgment in favor of defendant Wittmer and against defendant Storandt for damages sustained to the car of defendant Wittmer is modified in accordance with the opinion, and, as so modified, is affirmed.