### GROSS et al. v. GROSS et al.
### No. 9454.

Circuit Court of Appeals.
Seventh Circuit.

June 29, 1948.

Charles F. Smith and Richard P. Tinkham, Jr., both of Wausau, Wis., for appellants.

Edward J. Byrne and Robert L. Spangel, both of Appleton, Wis., and Leonard F. Schmitt, of Merrill, Wis., for appellee.

Before MAJOR and MINTON, Circuit Judges, and LINDLEY, District Judge.

MAJOR, Circuit Judge.

This joint action was brought by William Gross, Mrs. William Gross, Emma Gross and Charles Steinfest against Frank T. Stroik and Home Mutual Insurance Company, a corporation, defendants, to recover damages for personal injuries incurred in an automobile collision between the car

driven by Stroik and one driven by the plaintiff, William Gross, in which the other plaintiffs were passengers. Thereafter, the Zurich General Accident & Liability Insurance Company was, on motion of Stroik and his insurance carrier, impleaded as a defendant as the insurer of the plaintiff, William Gross.

The jury found the plaintiff, William Gross, negligent and to blame for the accident to the extent of 20%, and the defendant, Stroik, negligent and to blame for the accident to the extent of 80%, and that the other three plaintiffs (passengers in the Gross car) did not assume the risk of negligence on the part of William Gross, their driver.

The judgment appealed from is predicated upon a special verdict of the jury. The judgment in favor of the plaintiff, William Gross, is against the defendant, Stroik, and his insurer, and that in favor of the plaintiffs, Mrs. William Gross, Emma Gross and Charles Steinfest, is against both the defendant, Stroik, and his insurer, and the plaintiff, William Gross, and his insurer. It is only the joint judgment against the defendant, Stroik, and the plaintiff, William Gross, and their insurers in favor of the other plaintiffs (passengers in the car of William Gross) that is involved in this appeal.

There is, therefore, no question here as to the negligence of the defendant, Stroik, or of his liability or of that of his insurer. It is only the liability of the plaintiff, William Gross, and his insurer to the other plaintiffs (passengers in his car) with which we are concerned. The parties before this court, therefore, are William Gross and his insurer as appellants, and Mrs. William Gross, Emma Gross and Charles Steinfest, and the insurer of Frank Stroik as appellees.

The special verdict was in the form of answers to certain specific questions. By such answers the jury found that both William Gross and Stroik were negligent in the manner of operating their automobiles and that the collision was the natural result of such negligence. The sole question and answer upon which the liability of William Gross and his insurer to the other plaintiffs (passengers in Gross' car) is predicated is as follows:

"If you find this collision was the result of negligence on the part of William Gross, then answer this question:

"Sixth Question: Did the plaintiffs, Mrs. William Gross, Emma Gross, and Charles Steinfest, assume the risk of such negligence on the part of William Gross?"

To this question the jury answered as to each of the passenger plaintiffs, "No."

While numerous questions are raised and discussed, we are of the view that only two questions need be considered:

(1) Is the credible evidence sufficient to support the jury's finding of negligence on the part of William Gross? If not, the court after verdict should have allowed the motion to change the jury's answer to the question inquiring as to his negligence from "Yes" to "No."

(2) Even though the plaintiff, Gross, was negligent as found, was such negligence sufficient to authorize a judgment against him and his insurer in favor of the other plaintiffs (passengers in Gross' car)?

On January 18, 1946, at about 5:30 p. m., William Gross, with his wife, Mrs. William Gross, his mother, Emma Gross, and Charles Steinfest as passengers, were driving in William Gross' 1940 four-door Chrysler sedan in a southeasterly direction on State Trunk Highway 10, an eighteen foot concrete highway. At the same time and place, Stroik was driving his automobile in a northwesterly direction on the same highway, with August Bleskey as a passenger, intending to turn left into an intersection town road that led off to the south toward Bleskey's home. It was a clear night, there was no other traffic on the road except a car following about a block and a half behind the Stroik car, going in the same direction. Both cars were properly lighted.

William Gross testified that as he approached the top of a slight grade, at a speed of about forty-five to fifty miles per hour, he first saw the Stroik car about five hundred feet away, approaching him on this highway, and at that time Gross was about two hundred and seventy-five feet northeast of the side road. The Stroik

car was traveling on its right or northerly half of Highway 10, and the Gross car was traveling on its right or southerly half. As Gross got within about twenty or twenty-five feet of this intersection, he testified that the Stroik car started to turn quite fast and at a direct angle to make the turn to the left, and turned right in front of him. Stroik testified that as he came up to this side road he practically stopped opposite the side road and looked and saw no car coming. Then he stepped on the gas a little bit and for the first time saw the lights of a car coming from the northwest over the hill. He said the accident happened in a matter of seconds after that. He also testified that the Gross car was about fifty feet away when he first saw its lights, although he admitted that when at the intersection a car approaching from the opposite direction was visible for a distance of three hundred feet. He also testified that he gave no signal, sign or warning of his intention or purpose of making a left turn.

Two other occurrence witnesses testified, Bleskey, a passenger in the Stroik car, and Figarino, the driver of the car which was following Stroik. It is unnecessary to relate the testimony of these witnesses except to state that the testimony of Bleskey throws no light on the occurrence itself. It may be pertinent to note that Figarino testified that the Gross car was in sight at the time Stroik started to turn, later stated that Stroik had started his turn before he (the witness) saw the lights of the approaching Gross car, and still later testified that he saw the lights of the Gross car at the same time Stroik started to make his turn. Plaintiffs who were passengers in Gross' car testified that they had been traveling at a speed of from forty-five to fifty miles per hour for some sixteen miles and that none of them protested or had any reason to protest against his method of driving or his speed, and that at the time of the accident he was driving on the proper side of the road.

The witness Paetzold, who was a civil engineer and county surveyor of Marathon County, Wisconsin, and whose qualifications were conceded, prepared a profile or map showing, among other things, the elevation of the highway in both directions from the point of collision. From this map he testified, "Assuming that a man was sitting in his car at a height of five feet at the south line of the intersection [point of collision], he could see a car approaching on the highway from the northwest when it was about eight hundred feet away." He also testified that when standing at the intersection he observed that a car coming from the northwest could be seen for that distance, which correspond with the figures on his map.

Thus, we have a situation in which Stroik suddenly turned from his own side of the highway to the other side, where the collision took place, and according to his own testimony he did this when the Gross car was only fifty feet away, notwithstanding, according to his own testimony, the Gross car could have been seen for a distance of three hundred feet. According to the other witnesses and particularly the surveyor, it was visible for a far greater distance. Admittedly, Stroik did this without giving any signal or warning of his intention to make the turn, as is required by the Wisconsin law.

We shall not attempt to discuss all of the numerous Wisconsin cases which have dealt with a similar situation. The most pertinent perhaps on the factual situation is the recent case of Zigler v. Kinney, 250 Wis. 338, 27 N.W.2d 433, which involved the collision of two automobiles where one had the right of way and the other attempted to cross the highway from a side road. The court, in language apropos to the instant situation, stated 25 Wis. page 343, 27 N.W.2d page 435: "At all times prior to the collision Zigler's car was entirely on its own side of the road. The speed of the Kinney car was about forty miles per hour as it approached the intersection and was reduced to twenty-five miles per hour when he started to turn. When the Zigler car reached the tip it was in plain sight of Kinney, and its lights were visible before that. The Kinney car until then was on the north, its own half of the road. When it turned left it invaded Zigler's half of the road. The Zigler car at no time until after the collision invaded the north half of the road, so that had

Kinney not turned to the left the cars would have passed without colliding."

Other cases dealing with somewhat analogous situations are Hansen v. Storandt, 231 Wis. 63, 285 N.W. 370; Grasser v. Anderson, 224 Wis. 654, 273 N.W. 63, and Gibson v. Streeter, 241 Wis. 600, 6 N.W.2d 662, relied upon by appellants.

In the Hansen case, the court discussed two provisions of the Wisconsin statute as to the right of way of parties at an intersection. As to these provisions, the court stated, 231 Wis. page 67, 285 N.W. 372: "These are separate and distinct provisions. The first makes the right of way of the turning driver depend upon the giving of a signal for a left turn. The second requires that left turns be made only after affording a reasonable opportunity to the driver of the approaching vehicle to avoid a collision."

On the following page, the court stated: "The giving of a signal is the condition upon which the turning driver's right of way depends. But even the existence of a right of way, while a circumstance that is entitled to considerable weight in resolving issues of negligence, gives no driver the right to proceed carelessly or recklessly into the path of another car under circumstances which give the other car inadequate opportunity to avoid a collision. In this case we think the jury was entitled to believe from the evidence that while a signal was given, it was so immediately followed by an abrupt turn across the path of the Wittmer car as not to give Wittmer an adequate opportunity to avoid the accident." While the jury in that case had found both drivers negligent, the court set aside the judgment against Wittmer (the driver going straight through) on the ground that there was no basis for a finding of negligence as to him.

In the Grasser case, also involving the right of way at an intersection, the court stated, 224 Wis. page 660, 273 N.W. 66: "Consequently, if Grasser, before finally turning left to cross the west lane, did not afford Anderson the reasonable opportunity to avoid a collision, to which he was entitled, then Grasser's failure in that respect was the most significant and controlling ultimate fact involved in the determination of the important issue of who was guilty of causal negligence in respect to yielding the right of way."

Appellee endeavors to distinguish the rule announced in these cases on the sole ground that the driver making the left hand turn in each began turning in the face of an oncoming car in plain sight, and it is argued that this ignores the facts as stated by Stroik. It is true the latter testified that when he first saw the lights of the Gross car it was only fifty feet away, but, as already noted, according to his own admission he could have seen it for a distance of three hundred feet, and according to the testimony of the surveyor, for a distance of eight hundred feet. Assuming that Stroik first discovered the Gross car when it was fifty feet away, we are unable to discern how it is of any benefit to his contention when the undisputed fact is that he could, if looking, have seen it for at least three hundred feet. So far as the record discloses, there was nothing to distract his attention from the highway ahead of him, and there is no explanation on his part as to why he did not see the approaching Gross car in ample time to remain on his own side of the highway until it passed, thereby avoiding the collision.

It is conceded that Gross was not negligent in the rate of speed at which he was traveling up to the point where he saw the approaching Stroik car. The sole negligence imputed to Gross is "that he was acquainted with the road, the hill, and should have anticipated that other vehicles might be traversing the intersection." We think this contention is unsupported by authority, reason or common sense. It is true, according to Gross' testimony, that he saw the Stroik car approaching from the opposite direction when it was five hundred feet away and at that time the intersection was about midway between the two cars. Each was properly traveling on his own side of a main highway, and certainly each had a right to assume that the other would not suddenly make a left hand turn and thereby appropriate that part of the highway which belonged to the other. The two cars arrived at the intersection at almost the same time, when Stroik without any signal or warning suddenly turned his car over on Gross' side of the highway

and in front of Gross' car. At that time, according to Gross' testimony, his car was twenty or twenty-five feet from the intersection and, according to Stroik's own testimony, the Gross car was only fifty feet away. An emergency was created, for which Stroik was to blame. As was said in the recent case of Hoehne v. Mittelstadt et al., 252 Wis. 170, 31 N.W.2d 150, 152: "We think that the emergency rule when properly applied must likewise excuse inaction on the part of the innocent driver in his proper lane of traffic when suddenly confronted with an automobile on the wrong side of the road."

The collision under the circumstances shown was inevitable. No care on the part of Gross could have avoided the collision and, in our view, there was no basis upon which the jury could have properly attributed any of the negligence to him. It follows that the motion to change the jury's answer concerning the negligence of Gross from "Yes" to "No" should have been allowed.

In view of what we have said, there is little if any occasion to discuss the asserted negligence of Gross toward the other plaintiffs who were passengers in his car. There is no way of determining from the special verdict of what this negligence consisted. Again, appellees concede that it was not speed but a failure to reduce the speed at an appropriate time which amounted to negligence in the control and management of the car.

The host-guest rule is succinctly stated in Pierner v. Mann, 249 Wis. 469, 472, 25 N.W.2d 83, 85, concerning which the court stated: "Under that law the host owes the guest the duty not to increase the danger the guest assumes as matter of law when he enters the car and not to create a new danger. The guest must accept the honest and conscientious exercise by the host driver of such skill as he has as to control of the automobile. This does not relieve the host from exercising what ordinary care requires under the circumstances for the safety of his guests. * * * It includes no higher duty to a guest than to use such skill as he has as to control of the car; and this includes exercise of judgment as an element of skill "

Also see the opinion of this court in Maruska et al. v. Maruska, 7 Cir., 155 F.2d 302.

Appellees in effect concede that the passenger plaintiffs assumed every element of negligence which might be attributed to Gross, except they argue, "This failure to reduce the speed was of such short duration that there was not time for a protest by the guests. It follows that there can be no assumption of this risk." We suppose that is literally a correct statement, but it is beside the point. It would seem that the guests had as much time to protest as Gross had to reduce his speed or stop his car so as to avoid the collision. The fact that the guests had no time to protest emphasizes the emergency with which Gross was confronted. It is our view, therefore, that the verdict furnishes no basis for the judgment in favor of the guest plaintiffs and against Gross and his insurer. Moreover, we think the evidence furnishes no basis for such a finding even if one had been made.

The judgment is, therefore, reversed, with directions to proceed in accordance with the views herein expressed.