MACCAUX and others, Plaintiffs and Appellants, vs. PRINCL and others, Defendants and Respondents: FIDELITY & CASUALTY COMPANY OF NEW YORK, Interpleaded Defendant and Respondent. [Five cases.]

*January 6—February 4, 1958.*

For the appellants there were briefs by *Evrard, Evrard, Duffy, Holman & Faulds* of Green Bay, for Lucy Maccaux and the Herman Mutual Insurance Company, and *Kaftan, Kaftan & Kaftan* of Green Bay, for the Cream City Mutual Insurance Company, the Mutual Fire Insurance Company, the Underwriters Insurance Company, and Allen J. Wickenberg, and oral argument by *Joseph P. Holman* and *Arthur J. Kaftan*.

For the respondents Arnold E. Princl and Hartford Accident & Indemnity Company there was a brief by *Welsh, Trowbridge, Bills, Planert & Gould* of Green Bay, and oral argument by *Fred N. Trowbridge*.

For the respondent Fidelity & Casualty Company of New York there was a brief by *Everson, Ryan, Whitney &*

*O'Melia* of Green Bay, and oral argument by *John C. Whitney* and by *Frank A. Murphy* of Manitowoc.

MARTIN, C. J.   The accident occurred in the town of Preble just outside the city of Green Bay, on Main boulevard at the intersection of Schoen street.   Main boulevard, paved and with curbs, is 46 feet wide in the area in question.   It runs north and south and the intersection referred to is a "Y" formed by Schoen street, running northeast and southwest, meeting Main boulevard on the west.   Located about 50 feet from the east side of Main boulevard, opposite the intersection, is the Maccaux Tavern; a driveway to the east from Main boulevard is located just south of the tavern.   Another wider driveway leading to the tavern is located a short distance to the north.

At about 9:30 a. m. on April 13, 1955, Princl was driving his vehicle north on Main boulevard approaching the intersection.   The trailer, a gasoline tank, was fully loaded; the entire vehicle weighed about 57,000 pounds and was 40 feet in over-all length.   Rain had fallen but at the time of the accident it was not raining.   A mist or fog in the air made it necessary for Princl to use his windshield wipers, but there was no appreciable obstruction to visibility.   The pavement was wet.

It was Princl's testimony that he was traveling 35 miles per hour as he approached the intersection, the speed limit in that area, and when he was a distance of about two blocks south of the first driveway he saw another vehicle approaching from the north at a point about a block and a half north of the intersection.   He watched the car until it appeared to him to be turning southwest into Schoen street, then glanced down at his speedometer.   When he looked up, the other car was directly in front of him, not more than four feet away.   Princl blew his horn, yanked his steering wheel to the right, and applied his brakes hard in an attempt to avoid hitting

the car by entering the tavern driveway. The other car, referred to as an old Chevrolet, was not hit but proceeded north on Main boulevard. Princl testified the front wheels of his tractor went into the driveway, the rear wheels hit the curbing just north of the driveway, his trailer jackknifed and he lost control of his vehicle, with the result that it ran into the front of the tavern, causing the property damage for which recovery is sought.

Questions with respect to Princl's negligence as to speed, lookout, and management and control were all answered in the negative by the jury. The findings were approved by the trial court. The only question raised on appeal is whether Princl was negligent with respect to lookout as a matter of law.

On a scale diagram of the area Princl located a point A, in the center of the east lane of Main boulevard just opposite the south driveway, to indicate the position of the other car in front of him as he looked up from the speedometer. He located another point, B, in the west lane of Main boulevard where it is intersected by Schoen street, to indicate the position of the car where he last saw it before glancing at the speedometer. The distance between these two points, according to the scale of the diagram, is 60 feet. Princl estimated the speed of the other car at about 20 miles per hour when he first saw it; his own was 30 to 35 miles per hour.

Appellants contend that the positions A and B are firmly and precisely established. They calculate that from the distance of 60 feet between them, the Chevrolet must have followed a curve of some 90 feet in going from B to A and at 20 miles per hour it traversed that distance in three seconds; that Princl, at 35 miles per hour, traveled 157½ feet during those three seconds, a distance in which he could have stopped his vehicle had he maintained a lookout and observed the Chevrolet making the turn into his path.

These conclusions cannot be made as a matter of law. While the evidence may be susceptible of the computations and conclusions deduced by the appellants, this court must adhere to the rule that "when a jury's findings are attacked, particularly when they have had the trial court's approval, our inquiry is limited to the issue whether there is any credible evidence that, under any reasonable view, supports such findings." *Olson v. Milwaukee Automobile Ins. Co.* (1954), 266 Wis. 106, 109, 62 N. W. (2d) 549. Had the jury found Princl negligent as to lookout, we could accept the time and distance calculations of the appellants as supporting the finding. The question is, Was the jury compelled to accept them in making its finding?

Princl's testimony as to the Chevrolet's speed and position is not as precise as appellants contend. With respect to the speed of the Chevrolet as he observed it up until it reached the intersection, he testified that "He wasn't going fast. . . . I would say he was going slower than I was going. . . . I would say 20 miles an hour." Princl's estimate of the Chevrolet's speed as 20 miles per hour has little probative value, since the vehicles were traveling in opposite directions. *Fessler v. Northwestern Nat. Casualty Co.* (1953), 265 Wis. 14, 60 N. W. (2d) 387. Furthermore, Princl testified that when he saw the car immediately in front of him it had increased its speed and "was going pretty fast when he got out of my way; I know that."

There is nothing in the record which precisely establishes the speed of the Chevrolet or the distance it traveled in making its "U" turn in front of Princl. The inferences to be drawn from the evidence were for the jury. Under all the circumstances it was not required to believe that the Chevrolet maintained a speed of 20 miles an hour, that the positions A and B were precise and the distance between them 60 feet, and that the Chevrolet traversed a curve of 90 feet between those points. From all the evidence before it, it could have

believed the speed of the Chevrolet was more than 20 miles an hour, the distance between A and B less than 60 feet and the distance traveled between those points less than 90 feet. Any variation in the speed of the Chevrolet or in the distance between B and A would result in a different lapse of time between Princl's observations. In any event, that lapse of time would be so short that this court could not say as a matter of law that Princl was negligent as to lookout.

It is a well-established rule that where different inferences may reasonably be drawn from the credible evidence, the question is for the jury and its findings should not be disturbed. *Trautmann v. Charles Schefft & Sons Co.* (1930), 201 Wis. 113, 115, 228 N. W. 741.

Princl testified that he watched the Chevrolet approaching in its own lane for about a block and a half until it reached the intersection at which point it turned to its right as if to go down Schoen street; the driver gave no signal of any intention to make a left or "U" turn within the area where a left-turn signal should have been given. Princl then took his eyes off the Chevrolet to glance at his speedometer. He cannot be held negligent as a matter of law for doing so. There being no indication that the paths of the vehicles would cross, Princl had the right to assume that the driver of the Chevrolet would not violate the law; he was not required to anticipate that the other driver would, without warning, make an abrupt turn in front of him; it was not incumbent upon him to keep his eyes constantly on the other car. Whether under all the circumstances he should have done so was for the jury to determine. See *Schultz v. Miller* (1951), 259 Wis. 316, 48 N. W. (2d) 477; *Hansen v. Storandt* (1939), 231 Wis. 63, 285 N. W. 370; *Koperski v. Hoeft* (1923), 179 Wis. 281, 191 N. W. 571. In *Hansen v. Storandt, supra* (p. 69), where a left-turn signal was given but not seen by the other driver, this court said:

"He was perfectly justified in looking from one car to the other, and if during a moment when his attention was focused on the car to his right he missed a left-turn signal and the beginnings of an abrupt turn by Storandt, it would by no means follow that a jury could infer negligent lookout."

*By the Court.*—Judgments affirmed.

FAIRCHILD, J. (*concurring*). The Chevrolet had been coming south, had given some appearance of turning toward the southwest and then had evidently made a "U" turn to the east and north. Princl left the highway, lost control, and damaged plaintiff's property as a result of his effort to avoid hitting the Chevrolet. He did not see the Chevrolet invade his path until it was "crossways" a few feet in front of him and completely on his side of the road.

Princl had been looking at his speedometer or elsewhere during the time it took the Chevrolet to make the "U" turn. There was no traffic or other condition diverting his attention. The jury found Princl not negligent with respect to lookout and gratuitously answered that such negligence was not causal.

In my opinion the verdict can be sustained as a finding that even if Princl had been looking ahead when it first became apparent that the Chevrolet would cross his path, the additional time and space he would have had in which to avoid collision would not have been sufficient to avoid the damage to plaintiff's property. But I do not think that a driver can be excused for not watching the road by reason of looking at his speedometer.

I am authorized to state that Mr. Justice CURRIE joins in this concurring opinion.