SPARLING, Respondent, vs. UNITED STATES SUGAR COMPANY, Appellant.

*October 1—October 20, 1908.*

*Master and servant: Injuries to servant: Unsafe place to work: Questions for jury: Assumption of risk: Contributory negligence: Fellow-servants: Champerty: Contingent fee: New trial: Newly discovered evidence.*

1. In an action for injuries to an employee in defendant's sugar factory who had been sent at night to repair a pump in the boiler room and fell into a trench recently dug in the floor and full of scalding water, it is *held* upon the evidence (tending to show, among other things, that he had no knowledge of the existence of the trench, that no barriers had been erected to prevent any one from falling into it, and that the boiler room was at the time full of steam, rendering vision difficult) that the questions of assumption of the risk and of contributory negligence were for the jury.

2. The fact that plaintiff was helped out of the excavation nine or ten feet from the place where he claimed to have fallen into it, and that he gave no direct testimony as to how he reached that position, did not conclusively show the falsity of his story or render the manner in which the accident happened a matter of mere conjecture.

3. The digging of the trench for the purpose of repairing a sewer under the floor of the boiler room being an unusual and exten-

sive change in the room itself, not incidental in its character, but closely akin to the original preparation of a place to work, the skilled mechanic to whom such repairs had been committed was not a fellow-servant of the plaintiff, but was discharging the duty of the master to provide a safe place to work.

4. An agreement by the plaintiff in an action for personal injuries to pay his attorneys for their services a sum equal to one half of the recovery is not champertous where they do not agree to pay any of the costs.

5. A new trial asked on the ground of newly discovered evidence of two witnesses who were examined at the trial was properly denied where no sufficient reason was given why they were not then asked as to the alleged new fact, and where the suggested evidence would be merely cumulative.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Affirmed.*

Action for personal injuries. The defendant owned and operated a large sugar factory at Madison, which was operated night and day. The plaintiff was a millwright, and at the time of the accident had been employed by defendant for more than a month as foreman of the night repair gang, and his duties were to repair such breakages in the machinery, belting, shafting, or pumps as happened during the night. There was much heavy machinery in the factory. The boiler room on the first floor was 119 feet long and 54 feet wide, and contained eight upright boilers arranged in a line running lengthwise of the room, and nearly in the middle, in batteries of two. The room had a cement floor. At the rear or west side of the line of boilers was a long brick blow-off pit or flume, about three feet deep and three feet in width, covered with plank, in which was a blow-off pipe which was connected with each of the boilers. Between boilers 6 and 7, near the south end of the room, was a passageway seven and one-half feet wide leading to the front or east side of the boiler room, and under the floor in the middle of this passageway was a sewer pipe leading eastward from the flume and somewhat southward to a catch-basin under the floor at the

east side of the room. The blow-off pipe discharged into the sewer pipe. The blow-off pit or flume not only contained this pipe, but also served to carry off and discharge into the sewer any water accumulating on the floor of the boiler room. In the southeast corner of the room was a large tank intended to receive condensed steam which had been used in other parts of the works, in order that it might be used again in the boilers. It had been found impracticable to use this hot water for some little time before the accident, and it had been allowed to be discharged into the flume or onto the floor. Three or four days before the accident the sewer became stopped up and did not discharge the water, hence it accumulated in the flume or on the floor. To remedy this, the plaintiff with other workmen, some three days before the accident, placed a portable steam pump over the flume at a point about two feet from boiler 6 and seven feet from boiler 7, which pumped out the surplus water and discharged it through a pipe to the outside of the building. This pump was guyed by a rope running to a feed pipe about two feet above the floor on the side of boiler 7, and another rope running to a like pipe on the side of boiler 6, thus forming a partial barrier in front of the passageway mentioned between boilers 6 and 7.

On the afternoon of November 3, 1906, the defendant sent a man named Anderson, who was a skilled worker in cement and in charge of repairs to sewers, to repair the sewer. He attempted to blow out the obstruction, but did not succeed, and then commenced to break up the cement floor in the passageway above the sewer. He had made some progress when he quit work on Saturday night, and continued on Sunday, and by Sunday night had opened a trench over the sewer nearly three feet deep and about the same width, running from the flume eastward nearly twenty feet in the middle of the passageway. This was the condition when he quit Sunday night, and he testified that at that time he placed an inch-

pipe about seven feet long running from the pump to the feed pipe on boiler 7 as a barrier. The pump stopped working at some time during Sunday night and the excavation and flume filled with hot water and some water spread over the floor. At about 2 o'clock a. m. the plaintiff was sent to repair the pump. He testified that he knew nothing of the making of the excavation; that he entered the room with his lantern through a door on the west nearly opposite the passageway; that it was full of steam, so that he could see little; that he went directly to the pump, touched one of the pistons, stepped over the rope to reach the other, and took a step or two and fell into the trench. He was seriously scalded. An employee in the boiler room named Becker helped him out of the trench near the middle of the passageway next to boiler 7.

The jury returned a verdict finding that the defendant was negligent in not giving warning by barriers or lights of the excavation; that this negligence was the proximate cause of the injury; that the plaintiff was not guilty of contributory negligence, and had suffered damages in the sum of $6,500. Judgment on the verdict was rendered for the plaintiff, and the defendant appeals.

For the appellant there was a brief by *Bashford, Aylward & Spensley,* and oral argument by *R. M. Bashford.*

For the respondent there was a brief by *Miner & Elver,* and oral argument by *F. M. Miner.*

WINSLOW, C. J. It is claimed that judgment should have been rendered for the defendant because the evidence conclusively showed, first, that the plaintiff assumed the risk or was guilty of active contributory negligence; second, that there was no negligence by defendant, and that if there was negligence in failing to put up a barrier it was the negligence of a fellow-servant.

Upon the first proposition the claim is that the evidence

conclusively showed that the plaintiff either knew of the excavation, or ought to have seen it had he been exercising ordinary care, and that he must have fallen into it about midway of its length while attempting to pass along the side of boiler No. 7, because Becker testifies that it was at this point he was helped out. We regard these propositions as untenable. The plaintiff testifies that he knew nothing of the excavation and there is really no testimony to the contrary, except that it appears that, upon his examination as an adverse witness before trial, he stated that he was in the boiler room and went through the passageway on the Saturday night before the accident. Upon the trial, however, he positively denied that he was in the boiler room on the night before the accident, and explained that if he said that he did not know or understand what he was saying. This presented merely a contradictory state of the evidence, and it was within the province of the jury to decide which story was correct.

As to the claim that he ought to have seen the excavation had he been exercising due care, there was abundant evidence that the room was filled with steam, rendering vision very difficult, and in fact it could hardly have been otherwise when it is considered that the excavation was filled with very hot water and a large part of the floor also covered with it.

Nor is it conclusively shown that he was attempting to pass along the side of the excavation when he fell in. Conceding that he was helped out nine or ten feet from where he claims to have fallen in, and that he gives no direct testimony showing just how he reached this position, it must be remembered that he was suddenly plunged in scalding water, and must without doubt have at once made desperate struggles to extricate himself. Probably few persons under such circumstances would be able to tell just what movements they made or where their struggles took them. We can see nothing in the fact that he was helped out at some distance from the place where he claims to have fallen in which con-

clusively establishes the falsity of his story, nor do we think that it renders the manner in which the accident happened a matter of mere conjecture.

The claim that the evidence shows beyond dispute that sufficient barriers were put up by Anderson must also be rejected. It is true there was evidence by several witnesses that a small pipe or a plank or both reached from boiler No. 7 to the pump. There was also evidence by several witnesses that there was no barrier there except the rope, and the rope had been placed there by the plaintiff himself, not as a barrier, but simply to steady the pump.

The claim that the failure to place sufficient barriers before the excavation was the default of a fellow-servant is equally untenable. The breaking up of the floor to repair the sewer was not a mere detail of the common occupation committed by the master to his employees to be done by them in the ordinary prosecution of their work, but an unusual and extensive change in the boiler room itself, not incidental in its character, but closely akin to the original preparation of a place to work, which was committed to a skilled mechanic. Under familiar principles, the man who was prosecuting this repair was not a fellow-servant of the plaintiff, but was discharging the duty of the master to provide a safe place to work. *Cadden v. Am. S. B. Co.* 88 Wis. 409, 60 N. W. 800; *Jarnek v. Manitowoc C. & D. Co.* 97 Wis. 537, 73 N. W. 62; *Grams v. C. Reiss C. Co.* 125 Wis. 1, 102 N. W. 586.

A claim of champerty is made. The evidence on the subject showed without dispute that the plaintiff contracted with his attorneys to pay them a sum equal to one half of the recovery for their services in prosecuting the action. There was no agreement that they should pay any of the costs. This does not constitute champerty. *Dockery v. McLellan,* 93 Wis. 381, 67 N. W. 733.

A motion for new trial was made by the defendant upon

alleged newly discovered evidence. The affidavits used upon the motion were those of Becker and Anderson, two witnesses who were fully examined on the trial, and these affidavits simply state a little more exactly the condition of the passageway between boilers 6 and 7 after the excavation was made, and bring out the fact that there was sufficient room to pass between boiler 7 and the excavation, a fact which was not inquired about directly when they testified on the trial. No sufficient reason is given why this fact was not inquired about upon the trial, and, moreover, witness Becker did testify on the trial that he walked to the middle of the passageway on the side next to boiler 7, and then assisted the plaintiff out of the excavation and onto the floor, so that there must have been room to pass. Thus the new evidence became merely cumulative. As a matter of fact, it seems to have been admitted all through the case that there was sufficient room to pass at the point in question, so that the supposed new evidence would have made no change in the situation.

*By the Court.*—Judgment affirmed.