TRAUTMANN, by guardian *ad litem,* Respondent, vs. CHARLES SCHEFFT & SONS COMPANY and another, Appellants.

*December 5, 1929—March 4, 1930.*

For the appellant Charles Schefft & Sons Company there was a brief by *Hoyt, Bender, Trump, McIntyre & Hoyt* of Milwaukee, and oral argument by *Rodger M. Trump.*

For the administrator there was a brief by *Schoetz, Williams & Gandrey* of Milwaukee, and oral argument by *Alfred R. Gandrey.*

For the respondent there was a brief by *McGovern, Curtis, Devos & Reiss* of Milwaukee, and oral argument by *Wallace H. Reiss.*

The following opinion was filed January 7, 1930:

FRITZ, J. On this appeal the principal contention of the defendant corporation is that the court erred in changing the answers of the jury as hereinbefore stated and then ordering judgment thereon against it. The administrator of Krell's estate contends that the jury's assessment of damages is excessive and that the judgment was proper in so far as it provided for recovery from both defendants.

The rule is well established that if the evidence is conflicting, or if the inferences to be drawn from the credible evidence are doubtful and uncertain, and there is any cred-

ible evidence which under any reasonable view will support or admit of an inference either for or against the claim or contention of any party, then the rule that the proper inference to be drawn therefrom is a question for the jury should be firmly adhered to, and the court should not assume to answer such question either upon a motion for nonsuit or direction of verdict, or by substituting another answer after the verdict is returned. *Reul v. Wis. N. W. R. Co.* 166 Wis. 128, 163 N. W. 189; *Wiesman v. American Ins. Co.* 184 Wis. 523, 199 N. W. 55, 200 N. W. 304; *Henry v. La Grou,* 200 Wis. 110, 227 N. W. 246. Under that rule, on the appeal of the defendant corporation, the problem is not the broader question of whether the findings of the learned circuit judge are more warranted by the evidence than the answers of the jury, but the inquiry is limited to the narrow issue of whether there is any credible evidence which, under any reasonable view, will admit of inferences which may have been drawn by the jury in finding that Haasch was not guilty of any negligence which was a proximate cause of injury to plaintiff. In other words, the inquiry on this appeal is solely whether there is any credible evidence reasonably admitting of inferences favorable to the contention of the defendant corporation, because of which the jury, proceeding properly, could find that (1) Haasch's driving in excess of fifteen miles per hour was not a proximate cause of plaintiff's injury, and that he was not negligent in respect to (1) keeping a proper lookout, (2) properly controlling the truck, or (3) yielding the right of way.

The credible evidence reasonably admits of the following inferences: The impact occurred upon the right end of the front bumper of Krell's car striking the truck's right rear wheel when the rear of the truck was within six feet of the north crosswalk and near the center line of Ninth street. Krell was driving west on Hadley street and Haasch

was going north on Ninth street. When the truck was on the south crosswalk, which was approximately thirty feet south of the point of impact, Haasch slowed down to about fifteen miles per hour, and looked eastward and saw Krell's car approaching. In view of what he then observed, Haasch then concluded that the Krell car was far enough away to give him plenty of time to cross, and that he could safely cross ahead of that car, although on the trial he testified that he could not state the distance that Krell's car was then away or the rate of speed at which it was then approaching. Haasch could then have stopped within twelve feet, but having concluded, in view of his observation as to Krell's car, that he could safely cross, he increased his speed. When he was a little north of the center of the intersection he saw the Krell car again, and he then saw that a collision might occur. His car was under control, and as it would have required at least twelve feet within which to stop, he turned somewhat to the west and continued to increase his speed until the collision occurred.

The only witness who undertook to fix the rate of speed of Krell's car as it approached Ninth street was Fred Lambrecht. He testified that when the truck was at the south crosswalk he saw that Krell's car was twenty-five to thirty feet east of the east crosswalk and that it was traveling at a speed of thirty to thirty-five miles per hour. But, manifestly, Lambrecht was in error either in his testimony as to the relative location, at that time, of at least one of the cars, or in his testimony as to the rate of speed of Krell's car. For, thirty to thirty-five feet east of the east crosswalk would be about fifty feet east of the point of collision, and for the truck's rear wheel to reach that point necessitated its traveling about forty-five feet after the truck reached the south crosswalk. During the time that the truck's rear wheel traveled those forty-five feet at the rate of fifteen miles per hour and such acceleration as Haasch could achieve within

that distance, Krell's car, at a speed of thirty to thirty-five miles per hour, clearly would have gone much further than fifty feet. Consequently, the jury could infer that Krell's car must have been either twice as far away, or traveling only half as fast as Lambrecht testified, or else that the truck must have traveled at least half of the distance between the south crosswalk and the point of collision, or well toward the center of the intersection, by the time that Krell's car reached a point twenty-five to thirty feet east of the crosswalk, at which Lambrecht, according to his testimony, saw it approaching at thirty to thirty-five miles per hour. That being true, the jury could further infer that the Krell car was considerably more than twenty-five to thirty feet east of the east crosswalk when Haasch made his observation, while he was on the south crosswalk, and concluded that he had plenty of time to cross safely ahead of Krell's car. If so, the relative distances of the two cars from the intersection were not necessarily such as to impose upon Haasch the duty of yielding the right of way to Krell, as a matter of law, and whether he was guilty of negligence in not doing so was, under the evidence, an issue for the jury, and the court could not substitute its finding for the jury's answer.

Haasch having, upon entering the intersection, observed the Krell car, and having concluded that it was approaching at a distance and speed which afforded Haasch plenty of time to cross safely ahead of it, was not obliged to keep a continuous lookout to the east. It was his duty to also observe traffic conditions ahead and to his right. Meanwhile, he was entitled to advance into the intersection which he had concluded that he could cross in safety. Where and when, in the exercise of ordinary care, it was incumbent upon him to take another observation to the east, depended upon the existing traffic conditions as he knew, or in the exercise of ordinary care ought to have been aware of them, and in that connection he was entitled, with the exercise of ordinary

care, to rely upon his observations and conclusions upon that first view. All of those considerations were involved in the determination of whether Haasch was negligent in respect to keeping a proper lookout, and under the evidence presented an issue for the jury.

If, as hereinbefore stated, the evidence admitted of the jury's finding that Haasch was not negligent in not yielding the right of way to Krell, then it was likewise within the province of the jury, under the evidence, to find that Haasch was not negligent in respect to his control of the truck, excepting in so far as the matter of speed might be involved in an inquiry as to control. Aside from accelerating his speed, and, consistently with attempting to succeed in that respect, refraining from applying the brakes, there is no evidence of any conduct or omission on Haasch's part, up to the time of the impact, that the jury was obliged to consider negligence in the control of the truck, as a matter of law. The occurrences after the impact, when the force thereof brushed the rear end of the truck around to the west and north on its rear wheels, while its front wheels continued rolling northerly, until it tipped over on its side, the jury may have properly considered the result of physical forces which never were within Haasch's control and for which he was not responsible.

Likewise, if the jury believed that Haasch was not negligent in not yielding the right of way, then it was also within the province of the jury to infer that his driving at a speed in excess of fifteen miles per hour, and even increasing that speed within the intersection, instead of applying the brakes or reducing the rate, was not a proximate cause of the injury. On the contrary, the fact that all but the rear wheel and a few feet of the protruding body of the truck had cleared the pathway of the Krell car afforded basis for an inference that the excessive or increased speed rather tended to avert the collision than to cause it. And if, in that connection,

there is taken into consideration the fact that Krell had ample room to swerve to the south a few feet and thus avoid the collision, it is apparent why the jury concluded that Krell's excessive speed and lack of control—and not Haasch's speed in excess of the rate permissible under the statutes—were the proximate causes of plaintiff's injury.

It follows that the court erred in changing the jury's answers to the second, seventh, thirteenth, and nineteenth questions of the verdict, relating to Haasch's conduct. The jury's answers must be reinstated, and upon the verdict as returned by the jury the defendant corporation is entitled to have the complaint and Krell's cross-complaint dismissed, with costs.

On the subject of plaintiff's injuries and damages the evidence establishes the following: Plaintiff, then fifteen years of age and in good health, was thrown from his bicycle to the pavement at 5 : 30 p. m. on February 26, 1927, and was unconscious until four o'clock the following morning. He sustained a skull fracture which extended for two inches on the left side in the temporal region into the base of the skull. His hands, left knee, and thigh were bruised and sore, but those injuries healed in ten weeks. He had severe pains in the head and left side for three weeks, and he was in bed six weeks after the accident. Since his injury he has been very nervous; has had dizzy spells once or twice a week, which last half an hour or more at a time and are accompanied with headaches; could not sleep because of pains in the head; and cannot hear well with the left ear. The physicians who treated him concluded that there was an injury to the auditory nerve, that resulted in an eighty per cent. loss of hearing in the left ear, and injury also to the ocular motor nerve, that resulted in a nystagmus, which indicates a definite physical trouble to the brain and a disturbance of the apparatus of equilibrium, and causes headaches and dizziness. They were of the opinion that the loss of hear-

ing of the left ear and the headaches and dizziness would be permanent. Before the accident, in connection with attending vocational school, plaintiff had been employed running errands and learning the shoe-repairing trade, at $10 per week. He resumed that employment eleven weeks after he was injured, but for five weeks could work only part of the time, and since then has been unable to work continuously or earn a higher wage.

In view of the serious and permanent character of those injuries, the pain and suffering that plaintiff has sustained and probably will sustain, and the extent to which those permanent results will probably affect his ability to obtain employment and his earning capacity after his minority, the jury's award is not excessive.

On the appeal of the Charles Schefft & Sons Company, the judgment must be modified as hereinbefore stated. On the appeal of the administrator of the estate of Morris Krell, deceased, the judgment, in so far as it relates to said administrator and estate, must be affirmed.

*By the Court.*—Judgment affirmed as to the defendant James C. Murtaugh, administrator of the estate of Morris Krell, deceased, and reversed as to the defendant Charles Schefft & Sons Company, by dismissing the complaint and cross-complaint as to said defendant. Cause remanded, with directions to enter judgment accordingly.

A motion for a rehearing was denied, with $25 costs in one case, on March 4, 1930.