PARISH and others, Appellants, vs. AWSCHU PROPERTIES, INC., and others, Respondents.

*May 15—June 15, 1945.*

*Lowell T. Thronson* and *Joseph G. Hirschberg,* both of Madison, for the appellants.·

For the respondents there was a brief by *Kaumheimer, Alt & Likert* of Milwaukee, *Ben G. Slater* of Milwaukee, *Loverud & Mennes* of Stoughton, *M. A. Tollund* of Mount Horeb, *Schubring, Ryan, Petersen & Sutherland* of Madison, *Dudley Davis* of Madison, *Schneider & Clarke* of Stoughton, *August C. Moeller* of Milwaukee, and *Ela, Christianson & Ela* of Madison, and oral argument by *G. Burgess Ela.*

FRITZ, J.   In the allegations in plaintiffs' verified complaint, which detail some transactions, at unnecessary length, there are ambiguities and inconsistencies which tend to confuse and obscure and render it difficult to understand the basis

upon which they apparently are seeking to recover under sec. 182.23, Stats., from the defendants (who are respondents on this appeal) on the theory that they were stockholders of the Stoughton Company, which is indebted to plaintiffs for wages earned by them as its employees in 1935 and 1936. Liberally construed in favor of the pleader and briefly summarized, their allegations as to facts relied upon as basis for plaintiffs' theory are to the following effect.

Prior to and after May 7, 1932, plaintiffs and their coemployees, on whose behalf they seek to also recover herein, were employed by the Stoughton Company, a Wisconsin corporation, and the respondents were then and thereafter, at all of the times mentioned in the complaint, stockholders owning the number of shares of nonpar stock specified in a schedule attached to the complaint. That corporation, from May, 1927, to July 8, 1936, owned and operated a manufacturing business and plant located in the city of Stoughton; and on May 7, 1932, a corporation, "The New Stoughton Company," was incorporated under Wisconsin laws for the purpose of owning and operating that business and plant, and its articles provided that its capital stock shall consist of six hundred shares of common stock of nonpar value. On May 6, 1932, at a meeting of the stockholders of the Stoughton Company a resolution was adopted which authorized its president and secretary to sell and transfer all of its property for such consideration and terms of sale as they approved, provided that "any such sale shall either directly or through this corporation preserve to the stockholders thereof their ratable rights on the basis of present stock holdings;" and at a meeting of that corporation's board of directors on May 7, 1932, its president and secretary were authorized to sell and transfer all of its assets and business to the New Stoughton Company under a written contract which provided that as part of the consideration therefor the latter agreed to assume and pay all of the indebtedness of the Stoughton Company, including all unpaid

factory pay roll and office salary, and pay to the Stoughton Company $35,000 in specified instalments due in two, three, four, and five years, respectively, and also to pay $510 by issuing five hundred ten shares of its common stock without par value, at the agreed price of $1, to the Stoughton Company or to whom it shall designate. On May 7, 1932, the Stoughton Company subscribed for the five hundred ten shares of the nonpar-value stock and agreed to pay therefor at the rate of $1 per share by transferring and assigning all of its right, title, and interest in and to all of its assets to the New Stoughton Company; and in written instructions the Stoughton Company directed that when the New Stoughton Company issued stock on that subscription it should be issued to the stockholders of the Stoughton Company at the rate of one share for each twenty shares held by them in the latter company; and that its rights to the stock were thereby assigned to its said stockholders.

In addition there is alleged in the complaint the following:

"That no other or further action of the stockholders or board of directors of the said the Stoughton Company was ever taken in relation to the sale of its assets to the New Stoughton Company; that no certificates of stock in the New Stoughton Company were ever issued; that no part of the consideration agreed to be paid by the New Stoughton Company to the Stoughton Company was ever paid; that nothing was ever paid to the Stoughton Company by the New Stoughton Company as consideration for the purchase by the New Stoughton Company of its assets under the agreement 'Exhibit B;' that no part of the thirty-five thousand dollars ($35,000) agreed to be paid by the terms of said 'Exhibit B' was ever paid; that no permit was ever applied for and no permit was ever issued by the state of Wisconsin under chapter 189 of the Wisconsin statutes then in force for the sale of the securities of the said the New Stoughton Company. That it was contemplated by the stockholders of the said the Stoughton Company, the defendants in this action, that the business of said company should be continued by the New Stoughton

Company and that it was in fact continued by the New Stoughton Company in substantially the same manner as before by the same persons, that is to say the same persons who were officers and employees in the Stoughton Company continued in the New Stoughton Company in like capacities and there was no interruption in the running of said business until the appointment of the receiver [in 1936] as hereinafter set forth." . . . That no other stock in the New Stoughton Company than those five hundred ten shares was ever subscribed for or issued; and that no money or other thing of value was ever paid to the New Stoughton Company by any one in consideration for the issuance of any of its stock; that no part of the $510 mentioned in the subscription agreement and no part of the $35,000 mentioned in said agreement between the Stoughton Company and the New Stoughton Company was ever paid. "That it was never contemplated by the organizers of said the New Stoughton Company that the stockholders of the Stoughton Company should pay anything for the stock subscribed for . . . by its officers of that company and that none of the stockholders in . . . Stoughton Company and none of the stockholders of the New Stoughton Company ever paid anything for any stock in the said New Stoughton Company; that in fact the New Stoughton Company never had any stockholders; that it was never organized as a corporation. That all of the transactions hereinabove set forth in relation to the attempted organization of the New Stoughton Company and the attempted transfer of the business and assets of the Stoughton Company to the New Stoughton Company were part of a scheme and plan of the Stoughton Company, its officers, agents and stockholders to reorganize, amend and change its corporation structure for the purpose of reducing the liability of its stockholders for the wages of its employees under section 182.23 of the Wisconsin statutes; that such action was a fraud upon its then and future employee creditors; that there was lack of power in the said the Stoughton Company to effect such a reorganization; that neither under the statutes or its articles of incorporation did it have such power and its attempt to so reorganize was void; that the property and business of said the Stoughton Company was never transferred from its ownership and that the Stoughton Company in fact operated the said business from the year 1927

when it was organized to the time of the appointment of the receiver [in 1936] as herein set forth and its officers, agents and stockholders, the defendants herein, are liable for the unpaid wages of the plaintiffs herein."

And plaintiffs also allege that in 1936 a receiver was appointed on the petition of a judgment creditor,—whose execution had been returned unsatisfied,—for the final liquidation, under sec. 286.40, Stats., of the affairs of the New Stoughton Company; that the receiver collected and disposed of all the demands and accounts due to said company, and it has no property or effects of any kind other than those collected by the receiver; that he reported all salaries due the employees of said corporation and the amounts thereof earned during the last three months of their employment and within one year prior to the appointment of such receiver; that the court ordered that a dividend of 38.09 per cent be paid on said claims, and pursuant thereto $9,039.18 were paid to said wage claimants; but $29,022.21 still remain due and owing to them, and no assets are owned or controlled by the Stoughton Company or the New Stoughton Company to which the plaintiffs in this action may look for payment of their wage claims. Plaintiffs pray for judgment "for the discovery of all persons who may be stockholders of the said the Stoughton Company and the said the New Stoughton Company, and that . . . such stockholders be adjudged and decreed liable for the amount of the demands of the plaintiffs and of all similar demands which may be set out and proven in this action," etc.

On the other hand, in the answers filed by respondents, they deny the allegations in the complaint as to the matters stated above, excepting the allegations as to each defendant being the holder of common stock issued by the Stoughton Company in July, 1927; and they admit the proceedings in the receivership action as alleged, and that the stock of the New Stoughton Company was subscribed for in the name of the Stoughton Company, but allege that it was paid for by the

transfer to the New Stoughton Company of the equity in and to the assets of the Stoughton Company.

Under the facts as alleged in the pleadings it is evident that since 1927 the respondents have been stockholders of the Stoughton Company, but by reason of the failure to consummate the transactions by which they were to become stockholders of the New Stoughton Company, they never became stockholders thereof. Consequently, there is no stockholder's liability under sec. 182.23, Stats., on the part of the respondents to plaintiffs for debts owing to them for services performed by them unless such services were in fact performed for the Stoughton Company. On this subject of whether those services were in fact performed for that corporation, there are under the pleadings issues of fact by reason of the denials in respondents' answers in relation to particularly the above-stated facts (alleged in plaintiffs' complaint) which culminated in their allegations that no part of the consideration agreed to be paid by the New Stoughton Company to the Stoughton Company was ever paid to or received by the latter for its property and business; and that there never was any transfer of its property and business made from its ownership and it in fact operated said business from the year 1927 to the time of the appointment of the receiver in 1936. In those respects there are obviously substantial issues as to which there must be a trial in order to determine whether the services in question were in fact performed by plaintiffs for the Stoughton Company, of which respondents were admittedly stockholders.

In support of their motion for summary judgment respondents also rely upon statements in affidavits by F. J. Vea, Emerson Ela, and G. B. Ela, which, in so far as they are material in relation to the above-stated issues under the pleadings, are to the following effect: F. J. Vea states he was president of the Stoughton Company, and also of the New Stoughton Company from the date of its organization in 1932; that the

Stoughton Company discontinued operations in May, 1932, and sold and delivered all its assets to the New Stoughton Company, which discontinued operations July, 1936; that throughout that period the latter operated openly and publicly as the New Stoughton Company and manufactured truck cabs, etc., in the plant formerly owned by the Stoughton Company, which sold and delivered all of its assets to the New Stoughton Company in about the month of May, 1932; that from the time of the organization of the New Stoughton Company until it discontinued operations on July 1, 1936, the plaintiffs and the employees represented by them were employed only by the New Stoughton Company, and during that period no payments were made to them by the Stoughton Company and any unpaid wages owing to any of them are owing solely by the New Stoughton Company. Emerson Ela states that the action in which the receiver was appointed was solely against the New Stoughton Company and that the Stoughton Company was not a party thereto. G. B. Ela states that on an adverse examination of the plaintiff, Lester Parish, he made certain statements which respondents claim constitute admissions by Parish that he was in the employ of the New Stoughton Company at the time it discontinued operations and that it owed the wages for which he filed his claim with the receiver; that it was generally known around the shop that the pay checks were issued by the New Stoughton Company; and that the wages of the men around the shop owed by the Stoughton Company were all straightened up, as far as he knew, and no part of the amount he is now setting up is due from that company for wages earned prior to 1932.

As to statements made in affidavits or on an adverse examination in relation to contested issues under verified pleadings there is applicable the rule that the summary-judgment statute does not authorize the trial of such issues on affidavits or on adverse examinations. *Prime Mfg. Co. v. A. F. Gallun &*

174

*Sons Corp.* 229 Wis. 348, 355, 281 N. W. 697. As we said in that case,—

"The parties attempted to try this case upon isolated parts of adverse examinations, thus preventing the opportunity for the witnesses upon trial to court or jury to explain or contradict their testimony given in the adverse examination, and without the opportunity of the party opposing the motion for judgment to put in further evidence upon trial. The power of the court under the summary-judgment statute should be exercised with care. The statute does not authorize the trial of contested issues on affidavits. *L. R. Munoz & Co. v. Savannah Sugar Ref. Corp., supra* [118 Misc. 24, 193 N. Y. Supp. 422]. No more does it authorize trial of such issues on adverse examinations. The court does not try the facts upon affidavits but merely decides whether the case presents facts to be tried by a jury. *Norwich Pharmacal·Co. v. Barrett, supra* [205 App. Div. 749, 200 N. Y. Supp. 298] ; *Adler v. Wiener, supra* [197 N. Y. Supp. 599]. This applies to adverse examinations as well as affidavits. The summary judgment statute is drastic and should be applied only where it is perfectly plain that there is no substantial issue to be tried. The use made of the statute in this case was a perversion and an abuse of it."

Statements on an adverse examination before trial are not conclusive and when inconsistent or in conflict with subsequent testimony under oath on a trial it is within the province of the jury to decide which story is correct (*Sparling v. United States Sugar Co.* 136 Wis. 509, 513, 117 N. W. 1055; *Halamka v. Schneider,* 197 Wis. 538, 540, 222 N. W. 821; *Henry v. La Grou,* 200 Wis. 110, 115, 227 N. W. 246) ; and that is likewise applicable to statements in affidavits when they are inconsistent or in conflict with testimony given under oath on the trial by an affiant or other witnesses. The summary judgment is drastic and is to be availed of only when it is apparent that there is no substantial issue to be tried. It is not a substitute for a regular trial nor does it authorize trial of controlling issues on affidavits. If there is any substantial

issue of fact, which entitles plaintiffs to a determination thereof by a jury or the court, the motion for summary judgment must be denied. *Atlas Investment Co. v. Christ,* 240 Wis. 114, 2 N. W. (2d) 714; *Holzschuh v. Webster,* 246 Wis. 423, 17 N. W. (2d) 553.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings.