Mitchell, Respondent, vs. Lewensohn and others, Appellants.

*October 14—November 18, 1947.*

426

*A. L. Skolnik* of Milwaukee, for the appellants.

For the respondent there was a brief by *Bitker & Marshall*, attorneys, and *Lehman C. Aarons* of counsel, all of Milwaukee, and oral argument by *Mr. Aarons*.

BARLOW, J.    The original complaint of plaintiff and respondent sought equitable relief restraining defendants and appellants from ratifying and confirming the action of the president of the Express Company discharging respondent. An order to show cause and a preliminary restraining order were issued, requiring appellants to show cause why a restraining order *pendente lite* should not issue.    June 26, 1944, the preliminary restraining order was vacated and a further order denied, and the matter set for trial on September 30, 1946. June 29, 1946, the directors of the Express Company met, and ratified and confirmed the action of the president in discharging plaintiff.    Respondent then moved the court that he be permitted to file an amended or supplemental complaint and appellants moved for summary judgment on the original complaint and for the assessment of damages.    Both motions were heard at the same time.    The court first denied respondent's motion to file a supplemental complaint and later granted the motion.    The appellants' motion for summary judgment

was denied and final determination of the motion to assess damages growing out of the issuance of the temporary restraining order was deferred until the final determination of the action, which was the proper procedure under *Lewis v. Eagle* (1908), 135 Wis. 141, 115 N. W. 361. The court properly denied the motion for summary judgment after permitting the filing of a supplemental complaint because the nature of the action that would be set forth in the supplemental complaint was then unknown, except possibly its general nature. The supplemental complaint and subsequent pleadings filed would constitute the pleadings in the case. The original complaint had no further standing in the action except its use as evidence of admission.

In the supplemental complaint respondent set forth three causes of action whereby he seeks to recover, (1) the value of the stock owned in the Express Company pursuant to sec. 9 of the agreement; (2) damages suffered by reason of being unlawfully discharged; and (3) for an accounting of the business of the Express Company and the appointment of a receiver. Appellants moved for summary judgment on all three causes of action. As to the first two causes of action appellants contend that they did not arise until after the commencement of the original action, and for this reason claim right to summary judgment. The trial court properly answered this contention in the following language, referring to sec. 269.44, Stats., effective January 1, 1934:

"The proposed amendment is in 'furtherance of justice' and is one 'arising out of the . . . transaction . . . or is connected with the subject of the action upon which the original pleading is based.' Facts appear entitling plaintiff to the relief asked. Likewise the amendment requested complies with sec. 263.47 covering supplemental complaints."

Sec. 269.44, Stats., permits a trial court in its discretion and upon such terms as may be just to allow the amendment of

processes, pleadings, and proceedings notwithstanding it may change the action from one at law to one in equity or from one on contract to one in tort or *vice versa;* provided the amended pleading states a cause of action arising out of the contract, transaction, or occurrence, or is connected with the subject of the action upon which the original pleading is based. In both the original complaint and the amended complaint respondent seeks to protect his rights under a claimed unlawful discharge.

Appellants' next contention is they are entitled to summary judgment on the first cause of action set forth in the supplemental complaint because respondent failed to make a proper election under sec. 9 of the stock-repurchase agreement between the parties. Appellants admit that within the sixty-day period required in the repurchase contract respondent elected to have the company repurchase his stock as provided in the agreement, but it is claimed this was not an unequivocal election with the provisions of sec. 9 for the reason that in his notice of election respondent stated:

"The foregoing offer" does not "waive any of my rights or prejudice me in any manner in claiming damages flowing directly or indirectly from the attempted termination of my services by the company or from any other cause, . . . or to the measure of value of my stockholdings. . . ."

In the same letter, a copy of which was mailed to the directors, respondent made an offer to buy for cash the entire shareholdings of the other stockholders, the value to be fixed in accordance with the terms of sec. 9 of the repurchase agreement, or on the same terms that he elected to have the company repurchase his stock. It is argued this is merely an offer to buy or sell. We are unable to agree with this contention. Respondent clearly exercised his option to have the company repurchase his stock under the terms and conditions of the repurchase agreement. There is nothing in the agreement depriving respondent of any right he may have had against the company for breach of the contract or otherwise in the event

it repurchased his stock. The statement that he was reserving any rights he had in no way attached a condition to the exercise of his option. Any rights which he had would have been effective without making reference to them in his election. His offer to purchase the stock of all stockholders upon the same terms and conditions that he was requiring them to purchase his stock in no way affected his election. He merely indicated his willingness to purchase their stock.

After serving notice of his election to have the Express Company repurchase his stock respondent attended directors' meetings and a stockholders' meeting and made demands upon the company and its directors with reference to the management of the company. He did not tender his stock or request the appointment of a certified public accountant to fix the value of his stock as provided for in sec. 9 of the agreement. Appellants argue this conduct on his part constituted a waiver of his right to have his stock repurchased by the company. Appellants' position seems to be that when respondent exercised his option to have the company repurchase the stock he surrendered all rights to the stock and was thereafter deprived of any right to protect his investment. Appellants at all times, and in their answer, took the position that the repurchase contract expired at the end of five years, or in 1943, and therefore had no force and effect, and if it did not expire it was void for indefiniteness and void as against public policy. Respondent had a large investment and was the owner of a one-third interest in the company. Appellants' position would be tenable if respondent was attempting to rescind the contract and recover the purchase money by reason of fraud having been perpetrated. Here respondent claims ownership of the stock and relies on the agreement entered into with reference to it. He continued to own the stock until such time as the company repurchased it and lost no rights or privileges as a stockholder or officer until that time arrived. To hold otherwise would deprive this stock of its right of representation in the corpo-

ration because the company could acquire no right in it until it had repurchased it, and it was outstanding stock until that time.

As to the tender of the stock by respondent, the contract provided the manner in which its value was to be determined and the amount to be paid by the company for it. Until this was done there was no occasion to tender it because no useful purpose could have been served by so doing. The company by its conduct and its answer repudiated the contract of repurchase, and as is said in 58 C. J., Specific Performance, p. 1081, sec. 341:

"Whatever contrariety of opinion may exist as to the original necessity of tendering a deed before suit, in accordance with rules elsewhere considered the decisions are in accord in excusing a tender where the purchaser expressly repudiates the contract or takes such a position with reference to it that a tender would be a useless and idle ceremony."

We find no merit in appellants' contention that respondent did not use the required diligent effort to mitigate damages following his discharge. It is argued that he failed to make an effort to obtain employment and refused to accept other employment of a different or inferior kind, as shown by his testimony on adverse examination. In 81 A. L. R. 285, it is said:

"It is the general rule, however, that an employee who is wrongfully discharged is not obliged to seek or to accept other employment of a different or inferior kind, in order to minimize the damages."

See also *Loos v. Geo. Walter Brewing Co.* (1911) 145 Wis. 1, 129 N. W. 645, and *Parish v. Awschu Properties, Inc.* (1945) 247 Wis. 166, 19 N. W. (2d) 276.

In his third cause of action, among other things, respondent alleges "that at the end of the year 1946, defendant corporation had collected on behalf of its customers on C. O. D. deliveries, but had not remitted to them, the sum of $6,825.16, but had

only $263.62 on deposit in the bank with which to pay said sum belonging to its customers plus other current liabilities." This raises a question of fact as to whether there has been an abuse of their trust by the officers and directors, sec. 286.32 (3), Stats., and such wilful abuse of discretion on their part as to warrant judicial interference. *Thauer v. Gaebler* (1930), 202 Wis. 296, 232 N. W. 561.

We conclude that questions of fact as well as questions of law are raised in all causes of action set forth in the supplemental complaint, and the court therefore properly denied the motion for summary judgment.

*By the Court.*—Orders affirmed.