PARISH and others, Appellants, vs. AWSCHU PROPERTIES, INC., and others, Respondents.*

*November 18—December 23, 1947.*

* Motion for rehearing denied, with $25 costs, on February 17, 1948.

For the appellants there were briefs by *Lowell T. Thronson* and *Joseph G. Hirschberg,* both of Madison, and oral argument by *Mr. Hirschberg.*

For the respondents there was a brief by *Kaumheimer, Alt & Likert* of Milwaukee, *Ben G. Slater* of Milwaukee, *Loverud & Mennes* of Stoughton, *M. A. Tollund* of Mount Horeb, *Schubring, Ryan, Petersen & Sutherland* of Madison, *Dudley Davis* of Madison, *Schneider & Clarke* of Stoughton, *August C. Moeller* of Milwaukee, and *Ela, Christianson & Ela* of Madison, and oral argument by *Walter P. Ela.*

RECTOR, J. This matter was before us in *Parish v. Awschu Properties, Inc.* (1943), 243 Wis. 269, 10 N. W. (2d) 166, in which we affirmed default judgments against certain non-answering defendants. In *Parish v. Awschu Properties, Inc.* (1945), 247 Wis. 166, 19 N. W. (2d) 276, we reversed a summary judgment in favor of answering defendants upon the ground that substantial issues of fact were involved.

The facts as found by the trial court are: The Stoughton Company was incorporated under the laws of Wisconsin on May 19, 1927, to engage in the manufacturing business. In its articles it was empowered to subscribe for and hold stock in other corporations. In 1932 the company became financially embarrassed. On May 7th of that year there were outstanding a factory pay roll in excess of $8,000, unsecured claims of general creditors in excess of $60,000, and certain secured liabilities. On that day the New Stoughton Company was incorporated under the laws of Wisconsin. The board of directors of the old company authorized its officers to enter into an agreement with the new company for the transfer to it of the old company's assets in consideration of the payment by the new company of the old company's secured obligations, liability for wages and salaries, outstanding checks, the sum of $35,000 in instalments over a five-year period, and the issuance to the old company or its nominees of five hundred ten shares of the new company's common stock of the fixed value of $1 per share. The agreement was executed and consummated on May 7, 1932. The old company's assets were transferred to the new company. The old company subscribed for the five hundred ten shares in accordance with its agreement, but none of the shares was issued. The old company assigned to a trustee its rights to the $35,000 with authority to collect and distribute it to the unsecured creditors of the old company. As security for the payment of the $35,000, the new company executed to the trustee a chattel mortgage upon certain of its merchandise received from the old company. The new company paid the outstanding checks of the old company and the outstanding wage and salary claims. It commenced operations on May 7, 1932, and operated the business until the early part of July, 1936, when it was placed in the hands of a receiver. During the period of its operation the new company transacted business in its own name. The employees were paid in the name of the new company and it was general knowl-

edge among them that it had been organized on May 7, 1932. The old company transacted no business after May 7th and employed no personnel. The appellants were employed by the new company during the period covered by their wage claims.

The substantial issues of fact which were said by this court on the second appeal to require trial arose by reason of allegations in the complaint that the agreement for a transfer of the assets from the old company to the new was not consummated, that the assets were not transferred, that no consideration was received by the old company, and that the old company in fact operated the business during the period between the execution of the agreement on May 7, 1932, and the suspension of business operations in July of 1936. Upon this basis the appellants claimed that services performed by them in manufacturing operations during that period were performed for the old company and that the stockholders of the old company were liable for their wage claims. The trial court's findings resolved these issues against the appellants and there is substantial evidence to support them. The old company was authorized to own stock in the new company and to assume such liabilities as a stockholder might have under the law. Any liability for appellants' unpaid wages was incurred by the new company and its stockholders. Appellants have no claim for services rendered to the old company.

Other contentions are made, but we find it unnecessary to discuss them except for the claim that the entire transaction was designed to hinder, delay, and defraud the employee-creditors of the old and the new companies. The trial court made a specific finding, to which we have not called attention, that such was not the case. It found that the purpose of the transaction was to protect the property of the business against the claims of unsecured general creditors and that the wage claims of the old company's employees were scrupulously respected and paid. If it can be inferred that it was also the intention to protect the stockholders of the old company from wage claims that might accrue against the new one through

subscribing for the new company's stock in the name of the old company, we can hardly regard such a plan as a fraud upon the employees of the old or the new company.

*By the Court.*—Judgment affirmed.