DACHELET and another, Respondents, vs. HOME MUTUAL CASUALTY COMPANY, Appellant.

*January 10—February 6, 1951.*

414

For the appellant there was a brief by *Byrne, Bubolz & Spanagel* of Appleton, and oral argument by *Edward J. Byrne.*

For the respondents there was a brief by *Everson, Ryan, Whitney & O'Melia* of Green Bay, and *George F. Miller* of Algoma, and oral argument by *Mr. John C. Whitney* and *Mr. Miller.*

FRITZ, C. J. The collision between the car operated by Frank Englebert and the car operated by Carl Dachelet occurred shortly after midnight on November 24, 1948, on Highway 57, which at the place of the collision was a straight, level, two-lane, cement-paved highway, running generally northeast and southwest. A short distance to the northeast of that place an incline began and extended for several hundred feet to the crest of a hill, and then the road curved somewhat toward the northeast. About one hundred twenty-five feet northeast of the place where the cars collided there was an intersection of Highway 57 and a private driveway leading to the north to Englebert's farm. Englebert, aged sixty-five, had been visiting his daughter and son-in-law at their tavern, and in returning to his home, he was driving northeasterly on Highway 57. Between 10 p. m. and 12:30 a. m., Carl Dachelet drank two glasses and some more beer and three or four shots of whiskey or highballs at two taverns before driving southward on Highway 57 to the place of the collision. Three girls, with whom he had talked at one of the taverns, and who were riding southward in a car at thirty-five to forty miles per hour on Highway 57, were passed by Dachelet at such speed that he was out of their sight over the crest of said hill at the time the collision in question occurred. Counsel stipulated there was nothing to interfere with vision between the top to the bottom of the hill on Highway 57, and that to the southwest of the bottom of the hill it levels so that there is no interference with vision between the top of the hill and all points along the highway for some distance southwest of the scene of the accident.

Upon the cars colliding, Englebert was thrown from his car and instantly killed. At the inquest into his death, held on December 6, 1948, Carl Dachelet testified that when he got over the crest of said hill all he saw was *lights* which he figured were one hundred feet, or maybe two hundred feet,

ahead of him; that when he first saw Englebert's car approaching it was on its right-hand side of the highway; and that at the same time Dachelet's car was on his right side of the highway going southwestward; that he did not notice the Englebert car turning in any way; that there was not anything which called his attention to the fact that there might be an accident and he did not know why he applied his brakes; and that he was not sure that he was on his right side of the highway when the impact occurred.

However, on the trial Carl Dachelet testified that as he came over the hill he saw a dim *light* one half or three quarters of a mile ahead; that he did not notice whether this car was turning or whether the car's *light* deviated in any way, but he remembers *the light* was shining just about head on to him into his windshield, into his eyes; that when he traveled one hundred fifty to two hundred feet farther he determined that it was *the right headlight* of an automobile; that he is pretty sure he was on his right side of the road,— quite a ways over,—and when he noticed that *light* he got over a little bit more to his right. In answer, on cross-examination, "Did anything at all call to your attention the fact that Mr. Englebert was turning his car in any way," Dachelet testified, "The only thing I can recall was *that light* shining over in my eyes. That is the only thing that gave me any indication he [Englebert] was going to cross the highway." Dachelet further testified that he turned to his right and the right wheels of his car went off the concrete and then came back onto the pavement turning slightly south; that he remembers *the light* in his face at that time and that is the last thing he remembers until after the accident.

There are some conflicts and confusion in the testimony of traffic officers as to where the cars stood when they came to a standstill. A traffic officer testified:

The point that was one hundred twenty-five feet west of the west edge of the driveway indicates the east end of the

Dachelet car. We also measured the skid marks. The only skid marks showing, from the Dachelet car. Only one side of the car went off the cement. I observed skid marks leading northeast from the position of the Dachelet car, from where the car was, for a distance of seventy-three feet ten inches. I found those marks from the east toward the west from the direction Mr. Dachelet was driving and those marks started at about the center of the highway and then drifted toward the right side of the road until the right mark went off the pavement, then curved to the left or south again back on the pavement to the rear of the Dachelet car where it stood after the accident. I identified those marks as skid marks left by tires skidding on the road, and left by the Dachelet car. At the time of the accident the pavement was dry. It was cement pavement with a center line.

There was also testimony that Englebert's car was pretty much crossways on the highway, almost facing north; and there was testimony that the front of the Dachelet car was hooked together in contact with the Englebert car so that part of the Dachelet car was to the south of the center line. The cars were hooked in front like, pretty much head on, possibly a little more of the left side was over, and the Englebert car was facing a little more north and the other car was south. After the collision Englebert's body lay completely in the north lane of the highway with the head toward the north and about one foot south of the northerly edge of the concrete, and about even with the edge of the Dachelet car. The damage to the Englebert car was all along the front end. The damage to the Dachelet car was approximately two thirds of the front section. There was broken glass in the northerly lane of the highway northeast of or back of the Dachelet car as it stood after the collision.

In a special verdict the jury found that Englebert was causally negligent in the operation of his car, (a) by failing to keep a proper lookout; (b) by operating his car to his left and wrong side of the road; and (c) by operating his car when the lights of his car were insufficient for safe operation

of the car; *but* that he did not negligently fail to have his auto-mobile under proper management and control. As to Carl Dachelet the jury found he was causally negligent by failing to have his automobile under proper management and control; but he was not negligent (a) by operating his car at an excessive speed; or (b) by operating his car to his left or wrong side of the road. And the jury found that eighty per cent of the total causal negligence was attributable to Engle-bert, and that twenty per cent thereof was attributable to Carl Dachelet.

Appellant contends the evidence failed to establish that Englebert was causally negligent in the three respects found by the jury. That contention cannot be sustained. The only evidence in relation to the finding that Englebert was causally negligent by operating his car when his lights were insuffi-cient for safe operation thereof was the testimony by Carl Dachelet to the following effect: That as he came over the top of the hill a very dim light was all that he could see ahead of him; that it was somewhere one half to three quarters of a mile away; that he kept on going and saw that light coming and could not make out what it was, it was only one light; that it was after going two hundred or one hundred fifty feet before he could really tell what it was; that he did not know if it was a motorcycle or a car with one light; that when he got one hundred twenty-five to one hundred thirty feet from the light he realized the danger, that the one light shone right in his eyes; and that Englebert's right headlight was burning, and when Dachelet realized this danger he applied his brakes and pulled to his right. Appellant's claim that plaintiffs' evi-dence failed to establish that Englebert's lights were insuffi-cient is based solely on the fact that in testimony by Carl Dachelet at the inquest, which was held in relation to Engle-bert's death, twelve days after the accident, there is the following: "After you got over the Brussels hill, didn't you see Mr. Englebert's car? *A.* All I seen was lights." Because

of the word "lights" in that answer, appellant claims that all of the other testimony by Dachelet in relation to the insufficiency of Englebert's lights fails to warrant the jury's finding that his lights were insufficient for the safe operation of his car. In making that claim appellant disregards the fact that at the inquest there was also the following testimony by Dachelet:

"*Q*. Did you notice that the car's lights back and forth had deviated in any way? *A. The light,* I can remember was shining just about head on to me. *It* was shining right into my windshield, into my eyes."

"*Q*. What called it to your attention first? *A*. All I remember is *the light* shining right in my eyes, and that is when it happened I guess."

Manifestly as Dachelet in several of his answers at the inquest and subsequently at the trial used the word "light," and stated there was and he saw but one light, his use of the word "lights" in one instance does not preclude the jury from believing that there was in fact but one light and in finding that was insufficient for the safe operation of Englebert's car. That clearly was a question for the jury under all of the evidence, and under the circumstances there is applicable to the jury's finding the well-established rule that,—

". . . if the evidence is conflicting, or if the inferences to be drawn from the credible evidence are doubtful and uncertain, and there is any credible evidence which under any reasonable view will support or admit of an inference either for or against the claim or contention of any party, then the rule that the proper inference to be drawn therefrom is a question for the jury should be firmly adhered to, and the court should not assume to answer such question either upon a motion for nonsuit or direction of verdict, or by substituting another answer after the verdict is returned." *Trautmann v. Charles Schefft & Sons Co.* 201 Wis. 113, 115, 228 N. W. 741; *Wisconsin Telephone Co. v. Russell,* 242 Wis. 247, 7 N. W. (2d) 825; *Czerniakowski v. National Ice & Coal Co.* 252 Wis. 112, 31 N. W. (2d) 156.

In relation to the jury's finding that Englebert was causally negligent by operating his car to his left and wrong side of the road, the jury could consider credible Carl Dachelet's testimony that at the time he was one hundred fifty to two hundred feet from the other car he was completely on his right side of the center line of Highway 57; and that with respect to the center line he pulled to his right at the time he applied his brakes. And on cross-examination he testified: "*Q.* That is when the right side of the car went off the pavement? *A.* Yes. *Q.* Do you know that the right wheels returned on the pavement again? *A.* Yes. . . . *Q.* Did you turn your wheel to bring the car back on the pavement? *A.* No. *Q.* It just came on of its own accord? *A.* Yes. *Q.* And you remember the light as your car was coming back on the pavement? *A.* Yes." Upon that testimony the jury could and evidently did believe that Dachelet had previously been and still then was completely in his own lane of traffic; and that although he applied his brakes and pulled even farther to the right and there still was a collision, Englebert had invaded Dachelet's lane of traffic. Although as the cars finally stood after the impact, the left front corner of Dachelet's car extended over south of the center line about one foot, there was the testimony by traffic officers, that the entire seventy-three feet ten inches long skid marks, which led up to the rear of the Dachelet car, were completely on Dachelet's side of the road; and that at one point they went so far to the north that the southerly skid mark was five feet and ten inches north of the center line and the northerly skid mark was north of the north edge of the concrete and on the shoulder. Thus, in view of that testimony as to the skid marks at the points northeast of where the cars came to rest, the jury could believe that Dachelet was in his own lane; that the impact must have occurred in that lane with Englebert's car headed at an angle toward the left front corner of the Dachelet car; and that the impact evidently occurred northeasterly

of where the cars came to rest. That is likewise indicated by the position of Englebert's body, completely in the north lane of traffic, with the head a foot or less from the north edge of the concrete and about even with the front end of the Dachelet car. Moreover a witness who rode in the car which stopped in the north lane of traffic behind the Dachelet car testified that when she got out of the car she stepped in broken glass, and noticed that the front wheels of the car she alighted from were in or almost in that broken glass. From the testimony as to these facts it likewise appears that the impact occurred northeast of where the cars were found and that Englebert was thrown out of his car as it was forced backward.

In relation to the jury's finding that Englebert was causally negligent by failing to keep a proper lookout, there was, in addition to the evidence as to facts stated above, a stipulation that there was a clear view from the crest of said hill to all points on the highway for some distance southwest of the scene of the accident. Consequently, if Englebert had maintained a proper lookout as he drove northeasterly toward the scene of the accident he could and, in the exercise of ordinary care, ought to have observed the Dachelet car approaching as it came southward on the highway toward Englebert's car; and that he could and, in the exercise of ordinary care, ought to have made a sufficient observation to enable him to duly form a judgment as to the speed of Dachelet's car and compare it with his own speed in order to determine whether he could, in the exercise of ordinary care, safely turn left across the highway to enter his private driveway without colliding with Dachelet's oncoming car. Under the circumstances Englebert's failure to keep a sufficient lookout to enable him to see the approaching car warranted the jury in finding that he was causally negligent in failing to keep a proper lookout. To his failure in that respect there are applicable the statements in *De Baker v. Austin*, 233 Wis. 39, 45, 287 N. W. 720:

"The purpose of these statutes is to assure a proper lookout by the driver of the emerging car. The same degree of care as to lookout should be exercised in turning into a driveway as in emerging from it. We do not mean to imply that these statutes oblige one about to turn left into a driveway to stop before invading his left side of the road, but he is obliged to make as effective a lookout as stopping would have afforded him, and is obliged to make as effective a lookout to avoid interfering with an approaching car as would have been required had he been entering the highway from a driveway. So of sub. (5) of sec. 85.18, Stats.:

" '(5) *Vehicles turning left in intersections.* The operator of a vehicle within an intersection intending to turn to the left across the path of any vehicle approaching from the opposite direction, may make such left turn where it is permitted only after affording a reasonable opportunity to the operator of such vehicle to avoid a collision.'

"The reason for this statute is to assure a proper lookout by the driver of the turning car. The same degree of care as to lookout should be exercised in turning left across the path of oncoming cars at points other than intersections as at intersections."

In respect to appellant's claim as to conflicts or inconsistencies between Dachelet's testimony at the inquest and his subsequent testimony on the trial, there is applicable the rule that it is for the jury to determine which of the statements the jury believes to be the truth. *La Valley v. State,* 188 Wis. 68, 205 N. W. 412; *Parish v. Awschu Properties, Inc.,* 247 Wis. 166, 174, 19 N. W. (2d) 276; *Halamka v. Schneider,* 197 Wis. 538, 222 N. W. 821; *Henry v. La Grou,* 200 Wis. 110, 115, 227 N. W. 246.

By reason of findings by the jury in the special verdict that Carl Dachelet was causally negligent in failing to have his automobile under proper management and control, and that twenty per cent of the total causal negligence was attributable to him, the trial court ordered the recovery of his damages to be reduced from $3,650.07, assessed by the jury, by deducting twenty per cent thereof, and entering judgment

accordingly for his recovery of $2,920.06. On this appeal a motion to review that order reducing the amount of Carl Dachelet's recovery was duly served. Upon our review of the record in that respect it is our conclusion that the trial court rightly denied Carl Dachelet's motion to change said findings in the jury's special verdict. Consequently, the trial court's order in that respect must be affirmed.

*By the Court.*—Judgments affirmed.

HUGHES, J. (*dissenting*). I am unable to agree with the majority that the testimony in this case is sufficient to establish negligence on the part of Englebert immediately preceding the accident.

The plaintiff's testimony clearly discloses a high speed on his part and lack of control, as evidenced by the fact that his car came back off the shoulder, in spite of his intention to keep it on the shoulder, and crossed at least the north half of the highway.

The only testimony that would justify a conclusion that the Englebert car was on the left side of the road concerned the skid marks near the scene of the accident, which I do not deem to be conclusive. There was no means of establishing the point of impact. The fact that glass was on the plaintiff's side of the road is not conclusive. There was also glass on the opposite side of the road.

Plaintiff's testimony that the light of the Englebert car flashed in his face is not, in my opinion, sufficient to establish that Englebert was making a turn into his driveway. The point of impact was at least one hundred twenty-five feet southwest of the Englebert driveway, and to assume that he was turning there is pure speculation and does not overcome the presumption that Englebert was exercising due care in the operation of his automobile.

If Englebert were negligent in turning onto the plaintiff's side of the road, then it is difficult to justify a twenty per cent finding of negligence on the part of the plaintiff who would

then have been confronted with an emergency. I do not, however, base my dissent on this point, but purely on the ground that the finding that Englebert was on the wrong side of the road is speculative.

I am authorized to say that Mr. Justice BROADFOOT and Mr. Justice GEHL concur in this dissent.