FARMERS MUTUAL AUTOMOBILE INSURANCE COMPANY and another, Appellants, vs. ARCHAMBEAULT, Respondent.

*March 2—April 6, 1954.*

For the appellants there was a brief by *Nash, Clark, Rankin & Nash,* and oral argument by *John M. Spindler,* all of Manitowoc.

For the respondent there was a brief by *Cashman & Savage* of Manitowoc, and oral argument by *John R. Cashman* and *John C. Savage.*

STEINLE, J. Highway 42 at the place of collision runs north and south. It is a two-lane cement-paved highway with shoulders. A farm driveway leads from the west edge of the highway. The vehicles involved were traveling north. The time was 10:30 a. m. The pavement was dry and visibility was good. LeRoy Zimmer, driving a Packard automobile, sought to overtake the Archambeault truck. The collision occurred when the truck, a 1947 one-ton Ford, equipped with cattle rack seven feet wide, nine feet long, and six or seven feet high (the bottom three feet being completely inclosed), started to make a left turn from the east lane of the highway toward the farm driveway on the west side as the Zimmer car, traveling in the west lane, was in the act of passing it. Immediately before the impact the truck was moving at about five to 10 miles per hour. The Zimmer car was traveling at 50 to 55 miles per hour.

LeRoy Zimmer testified that he first saw the truck when it was 400 to 500 feet ahead of him in its right lane; that he moved into the west lane to pass the truck when he was 100 feet behind it; that he blew his horn when he was 50 feet behind the truck and continued to do so until he was two feet from the front of the rack on the truck; that the truck ·

then started to turn to the left and the vehicles collided about three feet west of the center line. Zimmer ran into a ditch, struck a mailbox and traveled about 50 feet after the impact with the truck. He had not slowed his car before the collision. He testified that at no time did Archambeault give a signal of intention to turn to the left.

The defendant, Rufus H. Archambeault, a dealer in cattle and horses, testified that just before the collision he was, "crawling along with two wheels on the right shoulder of the highway." The distance between the left side of his truck and the center line of the highway was four or five feet. He intended to turn into the farm driveway on the west side of the road. He did not hear the blowing of a horn. He did not see the Zimmer car in his rear-view mirror before he made the turn, but observed it while he was making the turn. The Zimmer car was about 100 feet behind him. There were no turn signals on the rear of the truck. He made no manual signal of an intention to turn left. He had signal lamps on the front fenders and turned those on 30 or 60 feet before starting the turn. He claimed that the light rays from the front signal lamps reflected out to the side of his truck so that the rays could be seen in sunlight by a car approaching from the rear. The Zimmer car struck the left front end of the cattle rack and then hit the left front fender of the truck.

The only other eyewitness produced at the trial was Allen Barta, a farmer. He testified that he stood near the barn on his farm, which is immediately north of that into which Archambeault had intended to turn. He assumed that the cattle truck would turn into that driveway because it was going slow. He said that the truck turned as the Zimmer car was passing it and that the truck was a little west of the center line at the time of collision.

It is contended by appellants that the trial court erred in changing the answer of the question of the special verdict so as to find that LeRoy Zimmer's negligence with reference to

lookout was a cause of the collision and also in changing the answers of the comparative-negligence questions from a finding of 65 per cent on defendant and 35 per cent on plaintiff to 50 per cent on each.

LeRoy Zimmer testified that he first saw the truck when he was 400 to 500 feet behind it. His testimony also indicates quite clearly that he continued to observe the truck from the time he first saw it until it turned into his lane. That testimony is not disputed. Were it not for the failure of LeRoy Zimmer to have observed the driveway leading to the farm on the west side of the road, it is our opinion that the question of lookout on the part of LeRoy Zimmer should not have been submitted to the jury. This is predicated on the rule declared in *Manchuk v. Milwaukee E. R. & L. Co.* (1940), 235 Wis. 579, 583, 294 N. W. 42, where the court said:

". . . the evidence does not sustain the jury's finding that the bus driver was negligent in respect to keeping a proper lookout, or warrant the submittal of that issue to the jury. The driver's testimony as to keeping a lookout is not contradicted or in conflict with any other evidence or such inferences as can reasonably be drawn therefrom. He testified that from the time he looked to the south on Seventh street, when he was on the east crosswalk of the intersection, he continued to observe plaintiff's automobile as it approached from 170 feet south of Lapham street up to the point of impact; and that during that time the bus traveled 70 or 80 feet and he saw the automobile as it began sliding when it was maybe 20 or 30 or 40 feet south of him, and that thereupon he applied the brakes and slowed up the bus just before the impact, so that it went only five, six, or seven feet after the impact. As there is no proof in conflict with this testimony or which rendered it incredible, the jury's finding that the driver was negligent in respect to lookout cannot be sustained; and the court erred in submitting this issue to the jury."

By finding LeRoy Zimmer negligent as to lookout, the jury obviously was of a mind that he ought to have observed

the driveway before he started to pass the truck and that under the circumstances he may well have anticipated a left turn by Archambeault. Such inference may with certainty be drawn from the testimony. On the other hand, the evidence is also susceptible of inference that even had Zimmer noticed the driveway he might still have attempted to pass the truck because of Archambeault's failure to signal a left turn and that hence Zimmer's failure to observe the driveway was not a cause of the collision. It was within the jury's province to determine whether such negligent lookout was actually a cause of the collision. Its finding in such regard should not have been disturbed by the trial court under the well-established rule set forth in *Dachelet v. Home Mut. Casualty Co.* (1951), 258 Wis. 413, 419, 46 N. W. (2d) 331:

"'. . . if the evidence is conflicting, or if the inferences to be drawn from the credible evidence are doubtful and uncertain, and there is any credible evidence which under any reasonable view will support or admit of an inference either for or against the claim or contention of any party, then the rule that the proper inference to be drawn therefrom is a question for the jury should be firmly adhered to, and the court should not assume to answer such question . . . by substituting another answer after the verdict is returned.'"

In the record there is an abundance of competent evidence that Archambeault failed to exercise ordinary care both as to lookout and in the manner in which he made the left turn upon the highway. The jury was warranted in finding that LeRoy Zimmer was causally negligent with respect to his speed and in the operation of his car.

It is plain that the comparison of negligence in this case was peculiarly for the jury. We certainly may not declare here as a matter of law that LeRoy Zimmer was as guilty of as high or a higher degree of causal negligence than was the truck driver who invaded Zimmer's lane of traffic and who

had failed to observe that he could not make a left turn with safety to an automobile following him.

*By the Court.*—Judgment reversed and cause remanded with directions to reinstate the jury's answer of "No" to question 4a of the special verdict; also to reinstate the jury's answers of the special verdict with reference to question 8 so that the negligence of Archambeault will appear at 65 per cent and that of LeRoy Zimmer at 35 per cent; and to grant judgment accordingly.